ELIZABETH S. SALTER, Administratrix, etc., Respondent, *v.* THE UTICA AND BLACK RIVER RAILROAD COMPANY, Appellant.

In an action to recover damages for alleged negligence causing the death of S., plaintiff's intestate, who was killed at a railroad crossing, plaintiff's evidence was to the effect that S., who was drawing logs upon a sled and had on a heavy load, approached the crossing from the east sitting sideways on his load, with his feet to the south, at a slow trot ; there was a single point on the street two hundred and thirty feet east from the crossing where a glimpse of a train approaching from the south could be had during the moment it was two hundred and sixty-two feet distant from the crossing. When S. reached that point of view the train which caused the accident was a long distance south from that point; no train could again be seen until he came to within twenty-one feet of the track. When S. reached this point the train was on a curve, the end of which toward the crossing was four hundred and thirty-five feet therefrom, and if moving at the rate of thirty miles an hour, as some of the witnesses estimated, it would have taken it ten seconds to reach the crossing. No bell was rung or whistle sounded, and two witnesses who were on sleds behind S. testified that they neither heard nor saw the train. S. appeared to have become alarmed at the first moment

in which a sight of the train was possible, and the evidence justified a finding that he tried to stop but could not. He then jumped from his load but was struck by the engine and killed. The track was depressed from eighteen to twenty inches below the surface of the street, and the descent commenced six or eight feet back from the rails; this slope was icy. Banks of snow and ice two or three feet high, beginning three or four feet from the rails, and extending easterly six or eight feet, bordered each side of the traveled track of the street, which was only wide enough for a single team. *Held*, that the evidence justified the submission of the question of contributory negligence to the jury.

*Salter* v. *U. & B. R. R. R. Co.* (75 N. Y. 273), distinguished.

The court charged in substance that defendant had a right to travel over its road at pleasure, and at such rate of speed as it saw fit, but that circumstances might make the exercise of such right an element of negligence; that great speed was not necessarily negligence, but in connection with other facts and circumstances might tend to establish it. *Held* no error.

The court charged that if the course pursued by the deceased was one which persons of prudence and self-possession would adopt under the same circumstances, he was not negligent in so doing; that the standard by which his conduct was to be judged was that of an ordinary careful, prudent man. *Held* correct.

(Argued January 26, 1882; decided February 7, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made April 14, 1881, which affirmed a judgment in favor of plaintiff, entered upon a verdict.

This action was brought to recover damages for alleged negligence causing the death of Frederick E. Salter, plaintiff's intestate.

The case has been twice to this court before. (See Mem. of decision on first appeal, 59 N. Y. 631, and report of decision on second appeal, 75 id. 273.)

The accident occurred in the village of Carthage. The deceased was engaged in drawing logs to a saw-mill, having to cross defendant's track, which runs north and south through the village. The mill is on the west side of the track; to reach it Salter drove down Furnace street, which runs east and west; he was sitting sideways on his load, his legs on the south side; the train approached from the south; the horses

crossed the track uninjured; the train struck the sleigh; Salter was seen to jump from the load on the south side, just before the train struck it; he was run over and killed.

The further material facts are stated in the opinion.

*Francis Kernan* for appellant. Plaintiff should have been nonsuited, because the evidence did not authorize a finding that the deceased was free from contributory negligence. (58 N. Y. 248; *Salter* v. *U. & B. R. R. R. Co.*, 75 id. 273.) To entitle the plaintiff to recover it is essential, in addition to proving negligence by the defendant, that there should be satisfactory affirmative evidence from circumstances, or direct testimony, or both, that the deceased did not contribute to the injury by any negligence or want of due care on his part. (*Reynolds* v. *N. Y. C. R. R.*, 58 N. Y. 248, 250, 252; *Wilde* v. *Hudson R. R. R. Co.*, 24 id. 430, 432; *Warner* v. *N. Y. C. R. R.*, 44 id. 466, 470, 471; *Salter* v. *The U. & B. R. R. R. Co.*, 75 id. 273; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, id. 330, 332, 3, 4.) It was the duty of the deceased to approach the railroad with his team under such control as to be able to stop or to turn them aside. (*Salter* v. *The U. & B. R. R. R. Co.*, 75 N. Y. 273; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, id. 330; *Wilcox* v. *Rome, etc., R. R. Co.*, 29 id. 358, 366–7; *Wilde* v. *Hudson R. R. R. Co.*, 47 id. 400; *Mitchell* v. *N. Y. C. & H. R. R. R. Co.*, 59 id. 468, 471; *Haight* v. *N. Y. C. R. R.*, 7 Lans. 11; *Railroad* v. *Houston*, 95 U. S. 697; *Harlan* v. *St. Louis, etc., R. R. Co.*, 64 Mo. 480.) Under the circumstances and testimony of plaintiff's witnesses it cannot be claimed that the deceased made vigilant use, or any use, of his eyes or ears, and failed to discover the train in time to stop or turn aside before he got on the track. (*Salter* v. *U. & B. R. R. R. Co.*, 75 N. Y. 273, 278–280; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, id. 330, 332; *Warner* v. *N. Y. C. R. R.*, 44 id. 465, 470.) If the statutory signals are not given, men are not to drive along without listening or looking for other sounds or signals of an approaching train, and if other warning is given the defendant is not liable. (*Palinsky*

v. *N. Y. C. & H. R. R. R. Co.*, 82 N. Y. 424.) Neither the fact that the train was a few minutes behind time, nor the speed at which the train is claimed to have been moving relieves the plaintiff from the consequences of want of due care on the part of the deceased. (*Wilcox* v. *Rome & W. R. R. Co.*, 39 N. Y. 358, 367; *Warner* v. *N. Y. C. R. R.*, 44 id. 465, 469, 470; *Salter* v. *The U. & B. R. R. R.*, 75 id. 273.) The defendant had a right to run trains at such times and at such speed as it saw fit. (39 N. Y. 358, 367; 24 id. 430; 44 id. 465, 468, 469; 47 id. 400, 402; *Salter* v. *U. & B. R. R. R. Co.*, 75 id. 237; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, id. 330.)

*William C. Ruger* for respondent. Defendant was negligent in failing to ring its bell. (1 R. S. 1237, § 38.) The defendant was negligent in running its train through this populous village, across its principal business street, at the rate of thirty miles per hour. (*Richardson* v. *N. Y. C. & H. R. R. R. Co.*, 45 N. Y. 846; *Massoth* v. *D. & H. C. Co.*, 64 id. 524; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 70 id. 119, 124; *Thomas* v. *D., L. & W. R. R. Co.* [U. S. Ct.], "The Reporter," 739, Vol. 12, decided Sept. 1881.) The deceased made as vigilant use of his eyes and his ears as the circumstances required. (*Massoth* v. *D. & H. C. Co.*, 64 N. Y. 524; 71 id. 285; 45 id. 846.) The obstructions to sight and sound were such as to relieve Salter from the charge of contributory negligence. (71 N. Y. 228, 236; id. 285; 78 id. 338; 79 id. 72; id. 464; *Mackey* v. *N. Y. C. R. R.*, 35 id. 75; *Voak* v. *N. C. R. R. Co.*, 75 id. 320; *Kellogg* v. *N. Y. C. & H. R. R. R. Co.*, 79 id. 72; *Stackus* v. *N. Y. C. & H. R. R. R. Co.*, id. 464.) Though it were possible for Salter, by acting differently to have escaped, he cannot be held guilty of the charge of contributory negligence for his error in judgment. (*Buel* v. *N. Y. C. & H. R. R. R. Co.*, 31 N. Y. 314; *Trombly* v. *C. P. N. & E. R. R. Co.*, 69 id. 158; *Dyer* v. *Erie R. R. Co.*, 71 id. 228; *Voak* v. *N. C. R. R. Co.*, 75 id. 320; *Cuyler* v. *Decker*, 20 Hun, 173; *Thurber, etc.*, v. *H. B. M. & F. R. R. Co.*, 60 N. Y. 326, 331;

*Weber* v. *N. Y. C. & H. R. R. Co.*, 58 id. 451, 456; *Massoth* v. *D. & H. C. Co.*, 64 id. 524; *Kellogg* v. *N. Y. C. & H. R. R. R. Co.*, 79 id. 72; *Stackus* v. *N. Y. C. & H. R. R. R. Co.*, id. 464.) Courts will not nonsuit, where any possible inference can be drawn from any of the testimony, which would relieve from the charge of contributory negligence. (*Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 N. Y. 464; *Kellogg* v. *N. Y. C. & H. R. R. R. Co.*, id. 72; *Cassey* v. *N. Y. C. & H. R. R. R. Co.*, 78 id. 518; *Terry* v. *Jewett*, id. 338; *Voak* v. *N. C. R. R. Co.*, 75 id. 320; *Dolan* v. *D. & H. C. Co.*, 71 id. 285.) The rate of speed bore both upon the question of negligence and contributory negligence. (*Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 70 id. 119, 124; *Massoth* v. *D. & H. C. Co.*, 64 id. 524; *Richardson* v. *N. Y. C. & H. R. R. R. Co.*, 45 id. 846.) The proper test is, did the deceased do as a prudent man would. (*Kellogg* v. *N. Y. C. & H. R. R. R. Co.*, 79 N. Y. 72, 76; *Stackus* v. *Same*, id. 464, 468.)

Finch, J. When this case was last before us on appeal (75 N. Y. 273), we held that, upon the facts proven, the plaintiff's intestate was guilty of contributory negligence which barred a right of recovery. That conclusion was founded upon the rule, grown familiar by its frequent application, that a person upon a highway, in approaching a railroad crossing, is required to make a vigilant use of his eyes and ears to ascertain if there is an approaching train, and if by such use of these faculties, the vicinity of such train may be discovered in time to avoid a collision, the omission to exercise them is such contributory negligence as will bar a recovery for an injury resulting. The controlling facts upon which our judgment rested were those which established that the deceased persisted in an effort to drive across the track with his load of logs in front of the approaching train, when he could have seen and heard it, if vigilant and careful, in time to have stopped and awaited its passage, or to have turned to the right or the left without venturing upon the rail. The specific facts relied upon were principally the following, viz.: that at a distance of one hundred

feet easterly from the rails, and all the way from that point to the track, the deceased could have seen the train approaching if he had looked; that when within twenty-one feet of the rails an approaching train was visible all the way from the bridge, and if he had then looked it was possible for him to have stopped or turned his horses away from the track; that the highway at that point was smooth and nearly level, so that no difficulty intervened to prevent such stopping or turning aside; that though the day was cold and his neck and ears were somewhat muffled as a protection from the weather, it was hardly to be presumed that he could not have heard the rumble of the coming train; that under the circumstances it was his duty to approach at such rate of speed and with his horses so under control that he could have stopped; and that no prudent man would have driven his team so near without looking, nor so fast that he could not stop in an emergency.

A new trial has been had under the guidance and the test of our judgment thus rendered, which has resulted in a recovery by the plaintiff, approved by the General Term and brought here for our final review. It remains for us only to consider whether the facts have been so changed, or such new facts have been added as to make that a question of fact for the jury, which we decided as a question of law.

It is to be observed that on the former appeal the negligence found to have existed was two-fold, consisting, first, in a careless and heedless approach so near to the track as to put the deceased in a plain position of danger; and, second, of such conduct when in that position as indicated reckless rather than prudent action.

The ground for the first charge of negligence is now fairly dissipated by a new fact, or at least evidence from which a jury might fairly find it. Proof is now given that the deceased could not have seen the train while passing the curve at Spring street at any point on Furnace street more than twenty-one feet easterly from the track. There was a single point on Furnace street, two hundred and thirty feet back from the crossing, where a glimpse of the passing train could

be had during the moment in which it was two hundred and sixty-two feet from the crossing; but when the deceased passed that possible point of view, it is plain that the cars were not there, but a long distance off to the south. It is shown, therefore, that no amount of vigilance which depended upon eyesight could have disclosed to deceased the approach of the cars when as far from the crossing as the Spring street curve, until a point was reached on Furnace street about twenty-one feet from the rails. There is evidence that the deceased approached the crossing upon a slow trot and that his horses were kind and well broken. Two witnesses who were driving behind the deceased, and like him were on sleds drawing each a load of logs, and, therefore, were similarly situated, except as to distance from the crossing, testify that they neither heard nor saw the approaching train. It is also proved that the train was on the curve at Spring street when Salter reached the point on Furnace street from which it could be seen. The end of the curve toward the crossing was four hundred and thirty-five feet therefrom, and if the train was moving at the rate of thirty miles an hour, as some witnesses estimate, it was distant from the crossing, measured in time, only ten seconds, and even if the estimate of speed be reduced to ten miles an hour, the train would run from the curve to the crossing in half a minute. If there was any place on the road at which the signal of the bell or the warning of the whistle, required by law, were essential to the safety of the traveler, it was at this crossing, where sight could be of no service except at the moment when danger was already imminent, and safety turned upon the judgment of a few swift and frightened seconds. The facts thus developed go far to relieve the deceased from the imputation of negligence in approaching the point of danger. If he could have seen one hundred feet away from the rails the movement of the train, as we held established on the former appeal, and without looking, blindly and carelessly drove to the point of danger, it was easy to pronounce him negligent. But now that the evidence permits the inference that he could not see, however vigilant or watchful, until

within twenty-one feet of the track, and when his horses' heads must have been within four feet of the rails, it is impossible to say that his approach to that point was necessarily negligent, or take the facts and circumstances from which the question was to be determined away from the jury.

What next occurred has also its changed and modified conditions. The standard by which we should judge the conduct of a man brought suddenly and without fault into the presence of danger ought not to be rigid and severe. The deceased in the present case appears to have become alarmed and aroused to a sense of peril, either by something seen or heard, at the first moment in which a sight of the cars was possible. He looked both ways. It is quite probable that he saw the engine coming. He should have stopped even then, or turned aside, if he could. One would think that the instinct of self-preservation would have taught him that; but in any event it was his duty, and nothing could excuse a reckless effort to cross in front of the train except the impossibility of doing otherwise. There is evidence now from which a jury would be justified in thinking that he tried to stop and tried to turn, but could do neither. It is shown that at the crossing the railroad track was depressed from eighteen to twenty inches below the surface of Furnace street, so that for six or eight feet back from the rails there was a descent or slope of the highway of about two and one-half inches to the foot; that the roadway was icy, and the load drawn by the horses weighed between three and four thousand pounds. It is further proved that banks of snow and ice bordered each side of the traveled track, beginning three or four feet from the rails and extending easterly on each side of the roadway for a distance of at least six to eight feet. These banks appear to have been from two to three feet high. Into this channel, wide enough only for a single sleigh to pass, the deceased had driven, before any warning of danger had reached him. At four feet from the rails, his horses were upon the icy slope, with the momentum of the heavy load pressing them forward, and no chance for turning them sharply around to the right or left. That he tried to stop and could not; that he tried to turn and could not, becomes

not only a possible but a probable inference. The only re-
maining chance open in the few brief moments was to jump
from the load and abandon his property to the coming blow.
That last effort he made, only to be crushed under the wheels
of the train.

It is impossible to deny that the case as now presented is
widely different from that passed upon by us before. What-
ever may still be said in favor of the defendant's theory of
the negligence of the deceased, and very much was pressed
upon our attention which has caused reflection, it is still true
that the facts of the transaction now fairly admit of the con-
trary inference, and between the two it was the duty and the
province of the jury to choose, and we must abide by their
decision.

Two exceptions to the charge of the court remain to be con-
sidered. It is claimed that the speed of the train was sub-
mitted to the jury as possible evidence of negligence on the
part of the defendant. The charge, however, upon this branch
of the case seems to us, when taken altogether, not fairly open
to objection. The learned judge charged expressly that the
railroad company had a right to travel over its road at pleasure
at such rate of speed as it saw fit. Then followed a very nec-
essary qualification, that circumstances might make the exer-
cise of such right an element of negligence. When the ex-
ception was taken it was after a further explanation which,
in connection with the rest of the charge, must lead us to
understand it as saying, that great speed of the train was not
in itself necessarily negligence, but in connection with other
facts and circumstances might tend to establish it, and the jury
must determine whether the present was such a case. If a
train runs through a city or village, a crowded locality where
danger was to be apprehended, without ringing a bell or sound-
ing a whistle, and does so at a high rate of speed, the latter
fact is a proper circumstance bearing upon the question of neg-
ligence. Under such conditions the greater rate of speed
draws with it the need of a commensurate care and caution at
points where the speed would add to the chances and danger
of accident. While not in itself necessarily negligence, it may

be an element giving force to other facts tending to prove it, and explaining in a given instance the operation and effect of such other facts. It always bears more or less upon the question of contributory negligence, and is an element of the entire transaction, proper to be proved, and when established may be considered upon any issue which it tends to explain. Full force was given by the charge to the right of the defendant to choose and regulate its own rate of speed, but the jury were told that the right was not wholly unaffected by surrounding or attendant conditions, and might be negligently as well as rightfully exercised. In this we think there was no error. (*Massoth* v. *D. & H. Canal Co.*, 64 N. Y. 531; *Cordell* v. *N. Y. Cent. & H. R. R. R. Co.*, 70 id. 124.)

The charge was subjected to the further criticism of having stated incorrectly the standard of care and prudence by which the conduct of the deceased was to be measured. The direction complained of was that if the course pursued by the deceased was one which persons of prudence and self-possession would adopt under the same circumstances, he was not negligent in so doing; and that the standard by which the conduct of Salter was to be judged was that of an ordinary, careful, prudent man. This was the correct rule. (*Kellogg* v. *N. Y. C. & H. R. R. R. Co.*, 79 N. Y. 76; *Stackus* v. *Same*, id. 468.) The objection taken is that the question was not one of prudence and care, but of a vigilant use of eyes and ears at a point of danger. The last proposition was expressly charged at the request of the defendant in the precise language chosen by its counsel, and was in no sense inconsistent with the general rule, but an application of such rule to special and peculiar circumstances. There is no fixed and arbitrary standard of prudence and care. It changes with circumstances and conditions. Its precise measure in the present case was given to the jury exactly as requested by the defendant.

On the whole case we are of opinion that no error was committed, and that this long contest may now justly be ended.

The judgment should be affirmed, with costs.

All concur, except RAPALLO, J., absent.

Judgment affirmed.