FUNSTON v. THE CHICAGO, ROCK ISLAND & PACIFIC R'Y CO.

1. **Evidence:** EXPERT TESTIMONY: WHAT IS. It is difficult, if not impossible, to lay down any rule, applicable to all cases, as to what is or is not expert testimony; but whether a two-horse team could be turned in a certain road or opening, is a question of fact, to which a witness may testify without showing himself qualified as an expert.

2. **Railroads:** INJURY AT HIGHWAY CROSSING: EVIDENCE OF CONDITION OF HIGHWAY. In an action against a railway company for damages, on account of injuries inflicted by a passing train upon plaintiff while he was crossing the track of defendant upon a highway, evidence which tended to show that the highway was not as wide, or in as good and passable condition, at the time of the accident as it was before, was admissible, for the purpose of aiding in measuring the vigilance to which the defendant and its employes were to be held in the use of signals and the operation of trains in their approach to and passage over the crossing.

3. ———: ———: NEGLIGENCE: ADMISSIONS OF PLAINTIFF. In such case, where there was evidence tending to show that immediately after the accident the plaintiff said that defendant's employes were not to blame, and that he alone was to blame for the accident, *held* that the court properly instructed the jury that such admission was not conclusive upon plaintiff as to his legal rights, and that they should consider carefully as to the effect to be given to what plaintiff said, because of his situation, pain and suffering at the time. *Cooper v. Central R'y*, 44 Iowa. 134, followed.

4. **Instructions:** MUST BE CONSIDERED TOGETHER. It is not usual, and ordinarily not possible, to state in a single instruction all propositions to which the attention of the jury should be directed. And it is no ground for reversal that an instruction given does not present all the law applicable to the case, if what is lacking is supplied by other instructions given.

5. **Railroads:** HIGHWAY CROSSING: NEGLIGENCE IN GIVING SIGNALS Whether a failure to give any signal when a train is approaching a highway crossing constitutes negligence, depends upon circumstances. But if defendant, in constructing its road, left obstructions on its right of way, which wholly or nearly prevented travelers on the highway from seeing approaching trains, then it was negligence not to give the signals.

6. ——: ——: DILIGENCE REQUIRED OF ONE CROSSING THE TRACK. As a general rule, it is the duty of a traveler, before attempting to cross a railroad, to look and listen for approaching trains, but to this rule there are exceptions; and where the circumstances are such that a reasonably careful and prudent person would attempt to cross without so looking and listening, the failure to so look and listen is not negligence. The instructions in this case (see opinion) clearly and explicitly stated the circumstances, as indicated by the evidence, which would bring the case within the exception to the rule.

7. ——: INJURY AT HIGHWAY CROSSING: DAMAGES NOT EXCESSIVE. Considering the age, occupation and expectancy of life of the person injured, and the painful and permanent nature of his injury, and the fact that he is disabled for life from pursuing his usual vocation, *held* that a judgment upon a verdict for $8,000 was not so excessive as to justify interference on the part of this court.

## *Appeal from Jefferson Circuit Court.*

### WEDNESDAY, SEPTEMBER 19.

THERE ARE TWO COUNTS IN THE PETITON. The first states that the plaintiff was "in the act of crossing defendant's railroad track with team and wagon, on the highway, and, without negligence on his part, and by the negligence of the defendant in not giving the proper signals when approaching said highway with locomotive and cars, your petitioner was injured by said locomotive running into his wagon, upsetting and breaking the same, and the harness upon his horses, injury and damage to his horses, breaking the thigh, and otherwise injuring and mutilating the person of your petitioner."

The second count sets forth the same cause of action, ex-

cept that the negligence of the defendant is stated to be "the unsafe condition and negligent manner of the construction of the defendant's road bed and railroad track, and the negligent condition in which said crossing and the defendant's right of way adjacent thereto is and was kept and permitted by the company to remain in," whereby "both sight and sound of approaching trains" was "cut off and obstructed from passers by on the highway." The defendant pleaded a general denial and that the injury was caused by the negligence of the plaintiff. Trial by jury, verdict for the plaintiff for eight thousand dollars and judgment on the verdict. The defendant appeals.

*M. A. Low*, for appellant.

*D. P. Stubbs*, for appellee.

SEEVERS, J.—There was evidence tending to show that when the railroad was constructed there was a cut made and earth thrown up at and near the place where the highway was crossed, and, because of the matters just stated, the view of an approaching train on the railroad was to some extent, at least, obstructed. The plaintiff was passing along the highway seated in a wagon and driving two horses. He was approaching the crossing. In front of him was a wagon and team driven by one Noble. There was a descent to and an ascent from the track. Noble, when near the track, stopped his team and waited until a passenger train passed, when he immediately crossed. The evidence tended to show that the plaintiff saw the passenger train and Noble, and that he checked the speed of his horses, or entirely stopped, about the time Noble did. The plaintiff moved forward when Noble started his team, and when the plaintiff's horses stepped on the track he claims for the first time to have discovered an irregular or wild train which was following the one which had just passed, and it was by such that he was struck and injured. The evidence was conflicting as to whether the train causing the accident gave any signal when approaching the

crossing. There was evidence tending to show that the plaintiff was about two rods behind Noble when the latter started to cross the track. The evidence does not with entire certainty show how far the extra was behind the regular trian, but it did not exceed a mile, or from two to four minutes in time. The jury found, in answer to a special interrogatory, that the plaintiff did not look for a following train when his team was about to go down the decline to the track, as we understand, but that he "did look as soon as he could see;" that is, if he had looked sooner than he did he could not have seen the approaching train because of the obstruction. This we understand to be the effect of the finding. Many errors have been assigned and discussed by counsel, which we will endeavor to consider and determine with as much brevity as their importance seems to warrant.

I. Two witnesses for the plaintiff were asked, in substance, "whether a two-horse wagon could be turned down there near the crossing." That is, we suppose,

1. EVIDENCE: expert testi- mony: what is.

turned in the highway near the railroad track. The question was objected to as being immaterial and incompetent. The objection was overruled. It is now said that the evidence sought to be elicited was in the nature of expert evidence, and therefore inadmissible. It is doubtful whether the objection now urged was made below, but, conceding that it was, we think it can be well said that it is difficult, if not impossible, to lay down any rule as to what is or is not expert evidence, which is applicable to all cases; but we think that what is the width of a road or opening is a fact, although necessarily but an opinion, depending on accurate measurement. This being so, we think the question whether a team can be turned in a road, or a certain thing pass through a door or other opening, is also a fact as to which a witness may testify, and that such evidence cannot be classed as expert.

II. Evidence was introduced by the plaintiff tending

to show that the highway was not as wide, or in as good and. passable condition, at the time of the accident as it was prior to the construction of the railroad. This evidence was objected to, but the objection was overruled. It was urged that this evidence was inadmissible because there was no such issue, and for other reasons. We think the evidence was admissible, at least for the "purpose of aiding in the measurement of the vigilance to which the defendant and its employes are to be held in the use of signals and the operation of trains in their approach to and passage over the crossing." And the court so held, in the language just quoted. While the defendant had the right to lower the highway for the purpose of crossing and the proper construction of its road, yet it was its duty under the statute to put the highway in as good condition as it was before the construction of the railroad. If it failed to perform this duty, and the danger to persons crossing the railroad on the highway was thereby increased, the defendant in approaching such crossing with its trains should exercise more diligence than it otherwise might be required to do. The defendant and its employes knew, or were bound to know, the condition of this crossing, and whether by reason of obstructions persons passing along the highway in the immeditate vicinity thereof could readily or otherwise see approaching trains. It might not be negligence to omit giving signals when the train was approaching some crossings, and others it would be. Persons in the management of trains must act with a view to the circumstances by which they are surrounded, and whether they did so in this instance it was for the jury to say.

*2. RAILROADS: injury at highway crossing: evidence of condition of highway.*

III. There was evidence tending to show that immediately after the accident the plaintiff said that the employes of the defendant were not to blame. At the request of the plaintiff, the court gave to the jury an instruction literally the same as the instruction on the same subject given in *Cooper v. The Central R. R. Co.*, 44 Iowa, 134.

*3. ——: ——: negligence: admissions of plaintiff.*

It is urged that the two cases are not alike, but no differ-ence whatever is pointed out, and we have been unable to discover any which would constitute reversible error in one and not in the other. A similar instruction was given in *Perrigo v. The C., R. I. & P. R. R. Co.*, 55 Iowa, 326, which was to an extent disapproved, for reasons stated, and it was there said: " We are not prepared to say it contains reversible error;" but, in view of another trial, it was suggested that the instruction should be more carefully drawn, and somewhat limited in its scope and effect. The Cooper case was not overruled. The case of *Marquette R. R. Co. v. Kirkwood*, 45 Mich., 51, is not in point. In that case the court, in substance, directed the jury to scrutinize with care the evidence of railroad employes, because of their connection with and dependence on the company. There were no circumstances other than their employment which tended to cast suspicion on their evidence. In the case at bar, the instruction objected to is based on the thought that the employes testified truly, but the jury were directed to consider carefully as to the effect to be given to what the plaintiff said, because of his situation, pain and suffering at the time. Following the Cooper case, we cannot say there was reversible error committed in giving the instruction under consideration.

IV. The court instructed the jury, in substance, that evidence as to the condition of the highway before and after the railroad was constructed, was admitted only for the purpose of aiding them to determine the proper degree of diligence which should be exercised by the employes of the defendant when trains were approaching the crossing. This instruction is said to be erroneous: *First*, because there was no such issue. But it is stated in the petition that because of the failure of the defendant to give any signals the accident occurred. Now, whether such failure constituted negligence depended upon the condition of the crossing as explained in other instructions. *Second*

4. INSTRUCTIONS: must be considered together.

it is said, no rule was given the jury by which they were to determine the degree of dilligence to be used, and that it was unfair and misleading in not directing the jury to the corresponding obligations imposed on the plaintiff because of the highway and obstructions. This criticism would have much more weight, possibly, if no other instructions had been given the jury. It is not usual, and ordinarily not possible, to state in a single instruction all propositions to which the attention of the jury should be directed. The other instructions given the jury, which will be presently considered, sufficiently, we think, direct the attention of the jury to the matters because of the omission of which in the instruction under consideration it is said to be faulty.

V. The fifth paragraph of the charge is as follows:

"5. If you find from the evidence that some years ago, in the construction of the crossing and railroad in question, the defendant left obstructions in its right of way, which, at the time of the alleged injury, wholly and nearly prevented travelers, in part of their immediate approach to the crossing, from seeing oncoming engines and trains, it was the duty of the defendant's employes in charge of the engine which, it is alleged, caused the plaintiff's injury, to have blown the whistle or rung the bell, early enough in their approach to the highway to have enabled an ordinarily cautious and prudent man to take warning and avoid collision; and if you find from the preponderance of the evidence that such employes did not so do, and that, in consequence thereof, the plaintiff, without fault or negligence on his part, went onto the crossing, and was struck by the engine and injured, he will be entitled to the verdict."

*5. RAILROAD: highway crossing: negligence in giving signals.*

This instruction is objected to because it lays down the rule that the defendant was negligent in not blowing the whistle or ringing the bell, if there were obstructions which prevented travelers from seeing approaching trains. Whether a failure to give any signal when a train is approaching a

crossing constitutes negligence, depends upon the circumstances. Such failure may or may not constitute negligence. *Artz v. The C., R. I. & P. R. R. Co.*, 34 Iowa, 153; *Jackson v. C. & N. W. R. R. Co.*, 36 Id., 451. The instruction is based on the thought that if, in constructing its road, obstructions were left on the right of way by defendant, which wholly or nearly prevented travelers on the highway from seeing approaching trains, then it was negligence not to give the signals. By its own act travelers are prevented from seeing, or it is rendered difficult for them to see, an approaching train, and yet, it is said, the defendant is not negligent if no warning is given. To an extent, at least, the traveler cannot prevent being injured, for the sense of sight may not avail to prevent an accident. The defendant can, without inconvenience, or the impairment in the slightest degree of any right, give the usual signals. It seems to us that a common and ordinary regard for the rights of others, who are entitled to equal rights on the common crossing, should cast upon the defendant the duty of giving, at least, the ordinary signals, in a case where the defendant has caused obstructions to be placed so as to prevent a clear view of the road.

The instruction is also objected to because there was no evidence upon which it could be based. This is a mistake. For, as we read the record, there was evidence so tending.

While it may be true that, ordinarily, a person, when approaching a railroad crossing, should use both the sense of sight and hearing, he at the same time has the right to the opportunity to use both. For reasons hereafter stated, we do not think the plaintiff was bound to stop his team and listen for an approaching train, and, therefore, the court properly omitted in the instruction under consideration any reference to such fact.

There are other objections made to the foregoing instruction, of a technical character, none of which are well taken; and what has been said sufficiently indicates that in our opinion the instruction is correct.

VI.   The substantial merits of the case as tried, and the
theory of the court in relation thereto, is stated
in the seventh, eighth, and eighth and one-half
paragraphs of the charge, which are as follows:

*6. ——: ——: diligence required of one crossing the track.*

"7.   It was the plaintiff's duty in approaching and being
about to cross the railroad to exercise ordinary care and can-
tion, not only to know of the approach of trains, but also to
stop, if there was one, in time to avoid injury.   Care neces-
sarily imports the use of the senses and the adoption of means
and expedients adapted to the end in view.   If you find from
the evidence that at the time of the alleged injury the ground
was frozen and the plaintiff's wagon, whilst in motion, more
or less noisy, and that he had not a clear open view of the
railroad for a sufficient distance to make the crossing reason-
ably safe for him, the rule, as a matter of law, required him
to stop, and look and listen for approaching trains, and that,
although no signals were given by the train men, if he failed
to do so, and he was in consequence injured, or if by doing so
he could have prevented his injury, he cannot recover, and
your verdict should be for defendant.

"8.   But whilst the law has determined that, under the
more frequent circumstances and conditions which attend like
transactions, persons of common and ordinary prudence usually
adopt such means and expedients for the ascertainment of the
facts sought, it has not determined that they must do so al-
ways, under all conditions and circumstances.   And if you
shall find from the evidence that the crossing where plaintiff
alleges he was injured was in the country, where the track was
single, away from depots and switches; that it was one which
under these instructions imposed the duty of signaling upon
approaching; that at the crossing the highway approached
through a cut four to six rods long; that upon coming into
this cut the plaintiff found there Noble waiting to cross, and
the regular passenger train just going by at from thirty to
thirty-five miles per hour; that the usual distance between
trains following each other on the defendant's road at that

time was not less than one mile; that at the point of time when the plaintiff came up to Noble's wagon and was about to stop, or had but barely done so, Noble, immediately after the passenger train, drove over the crossing in safety; that plaintiff's attention was upon the movements of Noble and the passenger train, and that from all these circumstances and facts his belief was that no other train was approaching; that thereupon he was following Noble over the crossing in the same time and distance from him and behind the passenger train that an ordinarily prudent man would have done who had stopped and been waiting with Noble; and that the approaching wild train did not signal for the crossing in due time, and plaintiff had no knowledge or suspicion of its approach, he was not bound to have stopped, and looked and listened for it, and his failure so to do, if he did fail, will not defeat his recovery.

"$8\frac{1}{2}$. But if you fail to find any of these facts from the preponderance of the evidence, or if you find that Noble had started and the passenger train had left the crossing before the plaintiff had reached the cut; that he was thoughtlessly watching the retreating passenger train, and giving no heed to his duty to know that the crossing was clear and safe, and there had been time, as the trains were usually run, for the wild train to come into the hearing or sight of the plaintiff after the passenger train had passed the crossing, the plaintiff was bound to the observance of the rule, and if he failed to stop and listen for the wild train, and his failure contributed to his injury, he cannot recover, and your verdict should be for the defendant."

The two first paragraphs largely contain the law of the case. They are applicable to the facts. The eighth paragraph, however, is objected to by the appellant. It is said, it is erroneous because the jury were "told that the precautions on the part of the travelers, referred to in the previous instructions, need not be adopted under all circumstances, but did not tell what circumstances would excuse a

failure." We are not sure that we fully comprehend this objection, for the reason that it seems to us that the circumstances which would excuse such failure are clearly and explicitly stated. It would have been improper to call attention to circumstances which the evidence did not tend to show existed. As a hypothetical statement of facts which the evidence tended to establish, the instruction was carefully and fairly drawn. It may be conceded that ordinarily a traveler on a highway should look and listen before attempting to cross a railroad, but to this rule there are exceptions. In the case at bar, the jury were warranted in finding the facts named in the instruction to be true. We may, then, assume that the plaintiff saw the passenger train when it passed, and saw Noble waiting for it to pass, and that he saw Noble move forward and cross the track in safety. The plaintiff was but a short distance behind Noble, and he would naturally, and he could reasonably, conclude that he could with safety follow Noble. The jury could well conclude under the circumstances that a reasonably careful and prudent person would do so, and that he was not guilty of negligence in the absence of signals given by the approaching train, and we think the authorities so hold. See *French v. T. Br. R. Co.*, 116 Mass., 537; *McGovern v. N. Y. C. & H. R. R. Co.*, 67 N. Y., 417; *Spencer v. I. C. R. Co.*, 29 Iowa, 60; *Bonnell v. D. L. & W. R. R. Co.*, 39 N. J. Law, 189; *C. C. & C. R. Co. v. Crawford*, 24 O. St., 631; *Salter v. U. & B. R. Co.*, 88 N. Y., 42; *Continental Improvement Co. v. Stead*, 95 U. S., 161; *Pennsylvania R. R. Co. v. Ogier*, 35 Pa. St., 60.

As bearing on this question, counsel for appellant have cited many authorities, which, although not cited herein, have been examined, but we do not think any of them are as applicable to the present case as those above cited. For the most part, they enunciate the rule that travelers on a highway must ordinarily, where there are no obstructions or special and peculiar circumstances, look and listen for approaching trains before attempting to cross a railroad track.

Several instructions were asked by appellant which were refused. As we have determined that the instructions given are correct, it follows that those asked were properly refused, because they were based on the opposite theory.

VII. We think the general and special verdict is supported by the evidence, and that they are not inconsistent with each other. It is said, no cause of action is stated in the first count of the petition, because there is no statute requiring signals to be given. What has been said sufficiently indicates that the point made, in our opinion, is not well taken. It is urged that the damages are excessive. At the time of the trial, which was nearly two years after ·the accident, the plaintiff, who is a farmer, was fifty-two years of age, and his expectancy of life nearly twenty years. He was confined to his bed for about nine weeks after the accident. He was greatly bruised, and his leg was broken near the hip joint. The injury is permanent, because the fracture failed to unite, and a false joint has been formed, which shortens his leg about two and one-half inches. The plaintiff suffered greatly, and will continue to suffer pain as long as he may live, and cannot perform labor as he could have done but for the accident. We do not think the damages are so excessive as to justify us in interfering. We cannot say that the jury were actuated by either passion or prejudice.

7. ——: injury at highway crossing: damages not excessive.

AFFIRMED.