CANFIELD *v.* NEW YORK CENT. & H. R. R. CO.

*(Superior Court of Buffalo, General Term.   July 8, 1892.)*

INJURY AT RAILROAD CROSSING—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action for damages for injuries received at a railroad crossing, there was evidence that plaintiff was familiar with the crossing; that his view was in a measure obstructed by the cover of his wagon; that there were six tracks at the crossing, on the second of which from plaintiff were standing some box cars, cutting off the view of the third track to the east; that upon the sixth track stood a train with an engine steamed up; that a strong wind was blowing from the west, and it was a "nasty" day; that he looked for the flagman, but he was not visible; that he looked to the west, and saw the engine, but no other train; that he looked east as he passed the box cars, but his vision was obstructed by smoke; that he saw no engine and heard no signal until he was unable to pull his horse from the track before it was struck by a train, on the third track, running at a high rate of speed; that the horse was driven on a fast walk; that experiments made by defendant's civil engineer showed that a person standing on the south rail of the first track could see the third track east 208 feet, and with cars on second track, 134 feet; 5 feet further south he could see 384 feet, and at 10 feet could see 2,000 feet.  *Held*, that the question of contributory negligence was properly submitted to the jury.

Appeal from trial term.

Action by Valda M. Canfield against the New York Central & Hudson River Railroad Company to recover for injuries received by plaintiff while crossing defendant's track.   From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, made on a case and exceptions, defendant appeals.   Affirmed.

Argued before HATCH and WHITE, JJ.

*James F. Gluck*, for appellant.   *John Laughlin*, for appellee.

HATCH, J.   It is not urged upon our attention that the evidence offered was not sufficient to authorize the court to submit, and the jury to find, negligence upon the part of defendant in the management and operation of its train at the place where the injury was inflicted, and, as we think the evidence sufficient upon that question, it may be dismissed from consideration. The serious claim in this case is that upon the undisputed facts the plaintiff is shown to have been guilty of contributory negligence through which he suffered the injury complained of.   The evidence of plaintiff authorized the jury to find that plaintiff was familiar with the crossing where he was injured; that upon the day in question he was driving southerly upon Fillmore avenue, with a one-horse covered wagon; that his seat was about two feet from the horse, and the covered portions of the wagon projected beyond the seat, in a measure obstructing the view upon either side.   At the place of injury the street is crossed by six tracks.   Going south, the first to be reached is two branch tracks of the West Shore Railroad, controlled by defendant; next, two main tracks of defendant; next, two main tracks of the Lake Shore Railroad.  Upon the second branch track of the West Shore road there were standing some box cars, which came close up even with the curbstone of the street, and extended back some distance, cutting off the view of defendant's tracks to the east.   Upon the southerly track of the Lake Shore road there stood a train, with an engine attached, which was steamed up, and upon which were two men.   There was a strong wind, blowing hard from the west.   Plaintiff's horse was struck by a train propelled upon the first track of defendant at a high rate of speed, which produced the injury complained of. Plaintiff testified that, as he approached the track, he looked for the flagman, whom he knew was stationed there; but he was not upon the crossing, and was not visible.   He further states that he looked to the west, saw the Lake Shore engine, but saw no other train; that as he passed the box cars he looked to the east, but his vision was somewhat obstructed by smoke, which came down by the side of the cars; that he saw no engine and heard no sig-

nal of an approaching train until an instant after passing the box cars, and when his horse was upon defendant's track, when he attempted to pull his horse from the track, but was unable to do so before it was struck; that from the time he reached the first tracks his horse was driven upon a fast walk. Nearly all of these propositions were sharply controverted by the defendant, but we think they were all properly questions for the jury, and its finding thereon must govern.

The street at this point runs in a southeasterly and northwesterly direction, while defendant's tracks cross about due east and west. The track upon which the box cars stood curves to the south as it reaches the street, and to the north as it leaves it; thus making the distance from that track to the track upon which plaintiff was struck a number of feet closer upon the easterly side of the street, gradually lengthening the distance to the westerly side. It appeared by the testimony of a civil engineer called by defendant, and was not disputed, that the distance from the track upon which plaintiff was struck, in the center of the street, was 28 feet, gradually decreasing to 23 feet at the easterly curb line of the street; that standing upon the southerly rail of the track, with cars on, he could see defendant's main track, upon which the train came, 208 feet; and, making allowance for the projection of the car over the line of the rail, he could see 134 feet; 5 feet further south he could see 384 feet, and at 10 feet could see 2,000 feet, with no obstructions. This witness also measured horses and wagons similar to that driven by plaintiff, and found them to be about 16 feet 9 inches in length. This distance, divided, showed the horse about 7 feet; the space between the horse and wagon, 1 foot 2 inches; and the wagon, 8 feet 3 inches. Defendant claims that this testimony undisputed conclusively establishes that plaintiff could not have looked, for if he had he would have seen the train in time to avoid it, or if he looked he must have seen the train and attempted to cross in front of it, either alternative of which is fatal to plaintiff's recovery. I am unable to agree with this contention. The plaintiff testified that he was driving about the center, a little east of it. If he was in the center of the street, and he looked, the moment he passed the line of cars, his horse would have been from 12 feet 9 inches to 19 feet 9 inches of the track upon which the train was coming. Assuming that there was nothing to obstruct his vision, and that he looked without any confusion of sense or influenced by the conditions which surrounded him, if his horse was any longer than the one measured, or the space between it and the wagon further, he would have been still closer to the track. Of these things we do not certainly know. Plaintiff was required to be alive and vigilant. He must protect himself from the west. He must see that the engine upon the track, which was steamed up, over which he must cross, did not move, and thus leave him in a dangerous position between the tracks. As the tracks of all the roads were close together, he must look to the east also, and protect himself from danger in that direction. This condition at the crossing was of defendant's creation. It was a "nasty" day. A strong wind was blowing, tending to carry in an opposite direction the noise of the approaching train. There is evidence of smoke obscuring the vision before the horse was struck,—how long before does not appear. Does the fact that a skilled engineer, making measurements and taking observations for the single purpose of seeing how far away the train was visible, and uninfluenced by other considerations, conclusively establish that plaintiff was negligent, because he did not see the same distance at the time and under the conditions which surrounded him, or did not see the train in time to stop his horse and avoid it? This was all done, not in hours or minutes, but in the fraction of a minute. Doubtless it took the engineer, under favorable conditions, many minutes to verify his testimony; and it may be safely assumed that plaintiff, adopting the same methods and trying to arrive at the same results, would come to the same

conclusions. But that is not the test. The test is, did he do other or different from what an ordinarily prudent person would have done under the same circumstances? The position of defendant is conclusively answered by the case of *Massoth* v. *Canal Co.*, 64 N. Y. 524, where the facts were much weaker than are here presented. We do not understand that this case, as an authority, has been shaken; on the contrary, it has been cited with approval many times. *Greany* v. *Railroad Co.*, 101 N. Y. 419, 5 N. E. Rep. 425; *Salter* v. *Railroad Co.*, 88 N. Y. 42. Not only is this case cited with approval, but the doctrine announced in the cases themselves is authority to support the proposition here advanced. *Startz* v. *Railroad Co.*, (Super. Buff.) 16 N. Y. Supp. 810. We think no error was committed in submitting this case to the jury, and that the judgment and order appealed from should be affirmed.