(23 App. Div. 194.)

REDMOND v. MAITLAND.

(Supreme Court, Appellate Division, Second Department. December 31, 1897.)

NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR JURY.

The plaintiff, who had entered his horse for certain races on fair grounds in Westchester county, was in his sulky, and speeding his horse on the track, as, under his entry, he was entitled to do. The track surrounded an infield, and opposite various entrances to the grounds there were entrances to the infield, so that a team entering the grounds could pass straight across the track, and enter the infield. Defendant, driving a four-horse drag, entered the grounds, and, instead of driving into the infield at that point, drove along the track, and, on approaching the next entrance to the infield, turned out to take a wide swing in entering it. Plaintiff was approaching at high speed, and, being unable to stop his horse, called out in warning to defendant, who nevertheless persisted in his course, with the result of a collision, and serious injury to plaintiff's person and outfit. *Held*, that the facts required the questions of plaintiff's contributory negligence and defendant's negligence to be submitted to the jury.

Appeal from special term.

Action by John Redmond against Thomas A. Maitland. From a judgment of nonsuit, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Michael J. Tierney, for appellant.

Isaac N. Mills, for respondent.

GOODRICH, P. J. On September 25, 1894, the Westchester Agricultural Society was holding its annual fair on its inclosed fair grounds at White Plains. These grounds consist of a central paddock, or "infield," outside of which is a half-mile, oval racing track, about 40 feet wide, and outside of that the inclosing fence of the grounds. The land is level, and there is nothing to prevent a person, either on the track or the paddock, from seeing all parts of the track and paddock, except the judges' stand, which, however, is so located as not to enter into the present controversy. The plaintiff had entered his horse to compete in some of the trotting races, and had been assigned a stall on the grounds. There were to be races at 2 o'clock in the afternoon of the day above mentioned, but the plaintiff had not entered for these contests, although he had for the next day's race. About half past 10 in the forenoon, he was in his sulky, exercising and speeding his horse on the track, where others were also doing the same thing, and was somewhere about the western end of the course when the defendant drove his four-horse drag into the grounds, through a gate at the southeasterly part of the inclosure. Directly opposite the gate there was an opening into the paddock, through which the defendant might have driven into the paddock where he was intending to take the drag. Instead of doing this, he turned to the right, and drove along the racing track, intending to enter the paddock at another opening about a quarter of the way around the track, and at a distance of about an eighth of a mile. The defendant was driving slowly, and, when he drew near the last-named opening, he turned a little to the right or to the outside of the track, in order to make a larger and easier turn into the paddock. While he was thus attempting to turn into the paddock, the plaintiff's horse, which was being driven at a high rate of speed, came into collision with the horses or drag of the defendant, resulting in serious injuries to the plaintiff's person and outfit. He brings this action to recover damages therefor. The court, at the close of the plaintiff's evidence, granted a nonsuit; and from the judgment entered thereon, the plaintiff appeals.

There was evidence that the plaintiff had been driving several times about the track. He stopped to cool his horse, and again started, intending to drive a mile, or twice around the track, increasing the speed so that in the last quarter of a mile the horse should be driven at its highest speed, about 2.16; and the accident occurred on the last quarter. The first question to be considered is whether the plaintiff was guilty of contributory negligence, which

is well defined by Mr. Beach in his work on that subject (page 8)
as follows:

"Contributory negligence, in its legal signification, is such an act or omis-
sion on the part of a plaintiff, amounting to a want of ordinary care, as, con-
curring or co-operating with the negligent act of the defendant, is a proxi-
mate cause or occasion of the injury complained of. To constitute contribu-
tory negligence, there must be a want of ordinary care on the part of the
plaintiff, and a proximate connection between that and the injury. Perhaps,
besides these two, there are no other necessary elements."

It is always somewhat difficult to decide what constitutes con-
tributory negligence as matter of law, although, where the facts
are uncontroverted, the question is one of law for the court. The
tendency of modern authority, however, is towards the submission
to the jury of the question of contributory negligence, instead of
having it passed upon as matter of law by the court, except where
the facts cannot justify any other conclusion save that the plain-
tiff has been guilty of such negligence. Bearing this in mind, we
consider the evidence offered by the plaintiff. He proved that he
had the right, under his entry for races, to be speeding his horse
on the track at all suitable times. While he was coming along the
southeasterly stretch towards the outer gate where the defendant
entered, there was nothing to prevent his seeing the defendant's
drag, which was quite a prominent object. It was a large coach,
drawn by four horses, and sitting on the top were several of the
friends of the defendant. If the plaintiff saw the drag when it
entered the grounds, he must have seen that the defendant did not
cross the track and enter the opening directly opposite the en-
trance gate, but was driving, or intending to drive, either around
the track or to some other entrance into the paddock. Assuming
that the defendant had just as clear a right to drive around the
track as the plaintiff, or to enter the paddock by one opening or an-
other, the plaintiff was put upon notice that the drag was right-
fully on the track, and he was bound to a reasonable degree of dili-
gence in his subsequent driving. He had no right to drive reck-
lessly, with any preconceived idea that he had an exclusive right
to the track as against other persons who were rightfully using it
either for speeding or driving.

There is evidence also that when the plaintiff reached the last
quarter, and was about 200 feet from the defendant's drag, he first
saw it making the swing into the paddock; that he halloed to the
defendant, but that it was impossible to stop his horse within that
distance, although he tried his best to do so; and that the defend-
ant continued to turn without stopping until the collision occurred.
But the plaintiff contends that he had the right to assume that,
as he could see the defendant's drag, the defendant could likewise
see him; and that he also had the right to assume that the de-
fendant would keep his course along the track, leaving a sufficient
space on one side or the other, or both, over which the plaintiff
could drive in passing the drag, instead of turning into an entrance
to the paddock; and that he, relying upon this understanding, was
not guilty of any contributory negligence in continuing to speed
his course.

In Newson v. Railroad Co., 29 N. Y. 383, it was said:

"The law will never hold it imprudent in any one to act upon the presumption that another, in his conduct, will act in accordance with the rights and duties of both."

This case was cited with approval in Feeney v. Railroad Co., 116 N. Y. 375, 379, 22 N. E. 403, where the court said:

"The degree of care required of a person approaching a dangerous place should be proportioned to the degree of danger, known or apparent, to be encountered. * * * The plaintiff had the right to assume that the gateman would not be negligent on the occasion in question, although she was not, on this account, relieved from the necessity of exercising that degree of care that would have been used by a person of ordinary prudence under the same circumstances. The law does not measure that degree of care, but leaves it to the judgment of the jury when there is evidence upon the subject for them to consider."

In Salter v. Railroad Co., 88 N. Y. 42, the court held that a high rate of speed for a railroad train through a town was not per se negligence, but that, under the circumstances of that case, the greater rate of speed drew with it the need of commensurate care and caution at points where the speed would add to the chances and dangers of accident; that there is no fixed and arbitrary standard of prudence and care; and that it changes with circumstances and conditions. We are of the opinion that the uncontroverted evidence of the plaintiff, as already detailed, required the submission of the question of the plaintiff's contributory negligence to the jury.

The other question relates to the defendant's negligence. It appeared that there was a straight course into the paddock, directly opposite the entrance gate; and no reason is suggested why he should not have taken that course, instead of driving along the track to another opening, several hundred feet distant. There were other horses besides that of the plaintiff speeding along the track; and the defendant was warned by a person standing at the entrance gate not to go on the track, that he would endanger the life of a gentleman who was working his horse out on the track. There is evidence tending to show that the defendant must have heard this warning, and that he made some reply, but went on down the track towards the next opening; that there was no obstruction to his vision of the whole track; that, when he approached the second opening, he swung towards the outside of the track, apparently with the purpose of having room for a larger turn into the paddock; that the plaintiff halloed to him when 200 feet away, but that he continued his swing towards the paddock, and was in that act when the vehicles came into collision, his horses all the while being under his perfect control. We think this evidence required the submission of the question of the defendant's negligence to the jury.

On both questions, therefore, it was reversible error to grant a nonsuit, and the judgment must be reversed, and a new trial granted. All concur.