to wit, "Like all human tribunals, a jury is liable to err." We, how·ever, see nothing in the circumstances of that case which sustains the contention of the appellants. While it is true that some of the evidence given by Costigan as a witness, who was interested as a party, was contradicted upon vital points by the witnesses Graham, Bernstein, Staniland, and others, we are satisfied that the learned trial judge correctly stated what credence should be given to his evidence was for the jury to determine. While the witness Costigan was detailing the manner of keeping the books, and of advancing money for policy holders, an objection was interposed by the defendants, which was overruled, and the witness was allowed to state the mode in which he had transacted the business, and the manner in which he had advanced money, and the accounts became swollen. We think the court committed no error in permitting the evidence. The charge was full and clear upon the vital questions in the case, and the jury has solved the conflicts in the evidence in favor of the plaintiff.

Judgment and order affirmed, with costs. All concur.

---

(39 App. Div. 144.)

### MANLEY v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. March 22, 1899.)

1. NONSUIT—INJURY AT CROSSING—CONTRIBUTORY NEGLIGENCE.
    As plaintiff approached a crossing, his view was partly hidden by a pile of stone. He testified that when he got where he could look around the stone, about 3½ feet from the track, he stopped and looked to the west, and could see halfway across a bridge placed obliquely across a canal, but saw nothing; then he looked to the east, and saw a train that had passed; and the flagman had just finished flagging the train, and started to roll up his flag and to go to his shanty; and, when he was almost there, plaintiff started to cross the track, and saw an engine backing from the west, too late to escape it. He testified that the engine rang no bell and blew no whistle. Another witness testified that he saw plaintiff approach the track, and look west and then east, and then start to cross, just before he was struck, and that the stone pile was six inches from the ties. *Held*, that a nonsuit because of contributory negligence was properly refused.

2. SAME—CHARGE—JURY.
    The court correctly charged that looking in one direction, and making one glance, on approaching a place of danger, is not sufficient; that the duty was continuous, on approaching the crossing, to be vigilant and alert at all times; that the duty was urgent and insistent; and that it was for the jury, as careful and sensible men, to determine whether the duty was fulfilled, or whether failure to look west again was negligence.

3. SAME.
    A requested charge that if plaintiff was in a position where, by looking, he could have seen the approaching train, his failure to look was negligence, was covered by the court's charge that looking in one direction on approaching a place of danger is not sufficient; that plaintiff must be alert and vigilant at all times.

Appeal from trial term, Niagara county.

Action by Fred Manley against the New York Central & Hudson River Railroad Company. Verdict for the plaintiff for $4,000. Motion for a new trial on a case and exceptions made and denied. Judg-

ment entered for the plaintiff.    Appeal by the defendant from the judgment and the order.    Affirmed.

Upon a former trial the plaintiff recovered a verdict of $9,000, and from the judgment entered thereon an appeal was taken to this court, and the judgment was reversed on the ground that the court erred in refusing a request to charge.    The opinion is found reported in 18 App. Div. 420, 45 N. Y. Supp. 1108.    On the 5th of June, 1893, the plaintiff was passing along over Eighth street, which is a public street and highway in the city of Niagara Falls.    He was struck by a backing engine, and received injuries to such an extent that he was obliged to submit to an amputation of one of his legs at a point just below the knee.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, and McLENNAN, JJ.

Charles A. Pooley, for appellant.
P. F. King, for respondent.

HARDIN, P. J.    As the plaintiff approached the crossing, he passed a pile of stone, that had been placed temporarily on the side of the street, some 6 feet high; and as he neared the crossing the stone obstructed his view of an approaching train from the west to some extent.    The train which caused the injuries was being operated upon a switch, and had to come through a bridge westerly of the crossing, which was located obliquely, so that a person, as he approached the track, could not see, as is claimed by some of the evidence, entirely through the bridge.    The evidence given in behalf of the plaintiff indicates that the bridge was about 50 feet westerly of the crossing, and that the length of the bridge was about 110 feet; and the evidence on the part of the plaintiff indicates that a person, as he neared the crossing, could see halfway through the bridge, or a distance from the crossing of 105 feet.    Near the crossing there were a stone crusher and drills, working in the canal, and hoisting engines in operation, which made "a great deal of noise."    Just before the plaintiff approached the crossing, he stopped, and had a talk with Davis, between the stone piles, and then started towards the track. He says:

"I first came to the north track.    When I got so I could look around the corner of the stone pile, I stopped, and looked first towards the west; and I could see, from where I stood, about halfway across the bridge.    Then I looked to the east, and there was a passenger train that had just went by on the south-bound track.    The flagman had just got through flagging that train, and had started to walk towards his shanty, and roll up his flag, and I saw nothing either east or west, and I started to go on the track; and when I got in the middle of the north track I looked again towards the west, and I saw this engine, and I made an effort to get off the track.    I jumped backwards, and this train struck me, and knocked me from fifteen to twenty feet ahead, and my body cleared the rails, and my feet across the rails, and passed over my right foot.    Q. When you first came up there, and looked westward, what was there at that point where you stopped, and how near were you to the north rail of the north track?    A. I was from three to two and one-half feet from the track.    Q. What was there at that point where you looked? A. There was the stone pile.    The stone pile was about six to seven feet high at the lowest end, and it run up from fifteen to twenty feet, I should judge.    I could look into the center of the bridge, and see the trusses on the south side of the center of the bridge.    The bridge is angling across the canal. You don't look in a straight line down that bridge.    That is as far as I could

see. There was nothing on the bridge at that time. I listened. My hearing is good. I heard the bell on the passenger train that went by·on the south-bound track, but the engine that struck me rung no bell and blew no whistle. It was coming towards me, backing up. The tender was first. I have made observations of trains,—the speed of trains on railroads."

The plaintiff called John Davis, who was present at the time of the accident, and he testified, viz.:

"I was about twenty feet north of the railroad track. * * * I met him going to work. We were talking to one another there. * * * He was going to work for the construction company somewhere, and stood there talk-ing a little while, until he had to go to work, or else he would be late; and he attempted to go across the track; and there was a train going on towards Buffalo. He noticed that train, and kept on going towards the track. He looked west, and he looked east, and as he looked east he made an attempt to cross the track; and I seen an engine coming across, and I hollered to him, and by the time he turned around he was hit. After he talked with me he went along Eighth street, towards the track. Between Eighth street and the canal bridge at that point was a big stone pile, pretty close to the track. I think the man in the blacksmith shop was there to make measurements the next day, and it was six inches from the ties. I helped make the measure-ments, and found it to be only six inches. It was there before Mr. Manley went on the track and looked west. I saw him do that, and then I saw him look east, and then he stepped on the track. I saw the engine come in sight, coming backwards,—tender first,—hitched to a few freight cars. When I first saw it, it was on the crossing, pretty near,—a few feet. It had passed over the bridge. My hearing is good."

Both of the witnesses from whose testimony quotations have been made were cross-examined, and in some minor details varied their evi-dence. From the evidence, it is apparent that the plaintiff used some care and caution, in approaching the crossing, to apprehend the pres-ence of danger from moving cars either way.

Upon the subject of the plaintiff's freedom from negligence, the charge of the trial judge was very clear, pointed, and ample. Among other things, he said:

"Simply looking in one direction, and making one glance, as a man ap-proaches a place of danger, is not sufficient. And it is especially so with the plaintiff in this case, because he was familiar with the surroundings. * * * He testified that after he looked to the west he saw no train approaching, and that then he turned and looked to the east, and when he first looked in that direction, there was smoke in the way, and he waited an instant until it lifted, and he could see half a mile or a mile in that direction, and nothing was approaching. Bear in mind, gentlemen, that he testified that the stop was instantaneous, and this at three feet and a half, and that it was barely a step up to this track, a little over a step; that he kept on moving, made an instantaneous stop,—in his version, just stopping; waited, as he says, until the smoke lifted; and then went upon this track, and got hit. In this case, as in every other of like circumstances, the great difficulty is to measure the time. Witnesses—and with perfect honesty—will make great mistakes as to the time. * * * The duty was continuous upon him, when he started to approach that crossing, to be alert and vigilant at all times. That is, a man, when he approaches a crossing, simply by a casual glance does not ful-fill the duty; but, when he is approaching a place of danger, he must be. con-tinually alert, to guard against the danger which he apprehends is liable to come upon him. And that duty was insistent and urgent upon this plaintiff at all the times when he was approaching this crossing. I leave it to you, as a question of fact, to determine whether he fulfilled that duty; and you are to consider it as careful, sensible men. Did he fulfill the duty that was insistent and present with him at all times,—of being continually vigilant after he looked towards that train towards the west, and when he approached

this crossing? Should he have looked in the other direction again? Was his failure to do so negligence? That is a circumstance for you to take into consideration in this place."

In the course of the testimony of the plaintiff, he says:

"The flagman's shanty was southeast from me. The flagman, when he rolled up his flag and walked towards the shanty, got about a foot of the shanty when I started to cross the tracks. Q. Were you then right in front of him, so he could see you? A. Yes, sir."

Considering the evidence given by the plaintiff as a witness himself, and the testimony of Davis, and the circumstances surrounding the plaintiff at the time he approached the crossing, and the conduct of the flagman in folding his flag, which may have been an indication that no train was to be expected, we think the trial judge was warranted in refusing to grant a nonsuit on the ground of the plaintiff's contributory negligence, and that he accurately and fully presented to the jury the facts relating to the question of the plaintiff's vigilance and care at the time he attempted to cross over the track.

In Weber v. Railroad Co., 58 N. Y. 451, it was said that:

"The question whether ordinary care was exercised is one of fact for a jury, if there is any conflict in the evidence going to establish any of the circumstances upon which it depends, if there are inferences to be drawn from the proof which are not certain and incontrovertible, or if it is necessary to determine what a man of ordinary care and prudence would be likely to do under the circumstances. While the vigilance and caution required of the traveler must be proportionated to the known danger, it is also, in a measure, limited by the usual and ordinary signals and evidences of danger."

In the case in hand it was for the jury to determine, from the evidence given by the plaintiff and the witness Davis, and from the circumstances that the flagman had so conducted himself as to apparently assure the plaintiff that there was no danger to be apprehended from an approaching train, whether the plaintiff exercised that care that a man "of ordinary care and prudence would be likely to do under the circumstances."

In Salter v. Railroad Co., 88 N. Y. 43, which was a case where a party was approaching a crossing, and received injuries, it was said, viz. "that the standard by which his conduct was to be judged was that of an ordinary, careful, prudent man," and that, upon the numerous circumstances disclosed in respect to the conduct of the deceased in approaching the crossing, it was for the jury to determine whether such care and caution had been exercised.

2. There was a conflict in the evidence as to the rate of speed of the defendant's engine when it was backing down to the crossing. Some of the witnesses place the speed as high as 25 miles an hour, and other witnesses place the speed as low as 4 or 5 miles an hour. There was a conflict in the evidence in respect to whether the bell was rung or whistle sounded. There was evidence given warranting the jury in finding that no bell was rung, no whistle blown, and that the fireman, who was acting as engineer, was standing with his back towards the crossing as he approached it, drawing after him a train of some seven or eight cars. The learned trial judge instructed the jury that the defendant was bound to exercise reasonable care and caution, and that, if the defendant did not exercise that "care

and caution that men of ordinary prudence under like circumstances should have exercised when in charge of this train, then that would constitute the defendant guilty of negligence, and would make out the plaintiff's case" in that regard.

3. The learned counsel for the appellant insists that the learned trial judge committed an error in refusing a request which was made to charge the jury, viz.:

"That if the plaintiff was in a position where, by looking, he could have seen the train, his failure to do so constitutes negligence, and he cannot recover."

In response to that the trial judge said:

"I decline to change my charge on that subject, and give you the exception."

The learned trial judge had very pointedly said to the jury: ·

"Simply looking in one direction, or making one glance, as a man approaches a place of danger, is not sufficient. And that is especially so with the plaintiff in this case, because he was familiar with the surroundings."

And again he said:

"The duty was continuous upon him, when he started to approach that crossing, to be alert and vigilant at all times. That is, a man, when he approaches a crossing, simply by a casual glance does not fulfill the duty; but, when he is approaching a place of danger, he must be continually alert to guard against the danger which he apprehends is liable to come upon him. And that duty was insistent and urgent upon this plaintiff at all the times when he was approaching this crossing. I leave it to you, as a question of fact, to determine whether he fulfilled that duty; and you are to consider it as careful, sensible men."

We think the substance and the spirit of the request had been pointedly delivered by the trial judge to the jury, and that, therefore, he committed no error in refusing to repeat. It must be conceded that the case is a very close one upon the question of the plaintiff's freedom from contributory negligence, but, as it has frequently been said, there are no two cases of negligence that are just alike; and a citation of authorities requires a discrimination in respect to the facts of a particular case, to determine whether they resemble the case in hand. It is not deemed necessary or useful to point out, to any further extent than has already been stated, the precise line of facts which rendered it the duty of the court to submit the question of the plaintiff's freedom from negligence to the jury.

Some minor exceptions were referred to in the argument of the learned counsel for the appellant, and they have received attention, and none of them have been found to present an error requiring an interference with the verdict.

Two trials have been had, and the disputed questions of fact have been found adverse to the defendant on each occasion. Fortunately for the defendant, on this occasion the verdict is less than half what it was on the first occasion, and it is not even suggested now that the damages are excessive. We think the defendant should abide by the verdict.

Judgment and order affirmed, with costs. All concur.