EMIL WEILER, RESPONDENT, *v.* THE MANHATTAN RAILWAY COMPANY, APPELLANT.

*Negligence — starting a train, without warning, and running it into a crowd of people — contributory negligence — right of a passenger to leave a train at the invitation of a conductor — evidence of similar action on a previous occasion — error of judgment by an employee.*

In an action brought to recover for injuries sustained by the plaintiff through the defendant's alleged negligence, it appeared that the plaintiff took passage on an elevated train of the defendant at Eighty-ninth street, New York, on the Third Avenue line, to go down town to his work; that there was a block on the road near the Fourteenth street station, and that the train, which was filled with laboring men going to their work, was compelled to halt some twenty-five or thirty-five feet north of that station.

After a delay of about six or seven minutes the conductor announced to the passengers: "All who are afraid of being late for work get off." Thereupon a large number, certainly over fifty, got out upon the walk (thirty inches wide) provided by the company for its employees, and proceeded quietly, "laughing and talking," towards the station platform, which was near by. Many of these people had almost reached the platform, some of them had even stepped upon the tracks for the purpose of mounting the platform in front, a mode of ascent rendered necessary by the barrier of an iron-rod which ran across the end of the platform, when the train in front of the station, which had caused the block, proceeded.

Thereupon the engineer of the train which the plaintiff and other passengers had just left, without notice or warning to the crowd of people in front of it, started his engine and moved towards and upon them. Those who were on the

track tried to save themselves by getting back upon the walk; others who were upon two short planks, nearest the track, which served to widen the walk at this point, pressed outward on the ordinary space devoted to the walk. Still others pressed backward, thinking to save themselves from the locomotive. A panic ensued; there were cries and shouts. People pressed against each other on this narrow and unprotected walk, and the result was that eleven men, including the plaintiff, fell to the pavement below.

*Held*, that the testimony was sufficient to justify the inference that the plaintiff's fall resulted immediately and directly from the state of things brought about by the engineer's negligence in thus starting the train.

That there was sufficient evidence of the absence of contributory negligence to warrant a verdict for the plaintiff, as the only contributory negligence claimed by the defendant was the bare fact of leaving the car upon the conductor's implied invitation.

*Filer* v. *New York Central Railroad Company* (59 N. Y., 351); *Bucher* v. *New York Central and Hudson River Railroad Company* (98 id., 133) followed.

It was urged that the judge erred in charging that the mere fact of leaving the train under the circumstances disclosed "was not in itself evidence of contributory negligence at all."

*Held*, that this was not error, for the reason that the mere leaving of the car at the suggestion of the conductor did not contribute to the accident.

That if the plaintiff had fallen directly from the steps of the car or from the walk as he first touched it, another question would have been presented.

*Hunter* v. *The Cooperstown and S. V. R. R. Co.* (112 N. Y. 371) distinguished.

That it was not error to refuse to charge that the defendant owed the plaintiff no active vigilance to guard him from accident, as this refusal must be considered with reference to what the judge had already charged, namely, that the defendant was only responsible for ordinary care.

That it was not error to reject evidence, in substance, that similar conduct on a previous occasion had not been attended by disaster, as that offer only amounted to showing that the defendant had been guilty of culpable negligence on one occasion without any resulting accident.

That the question presented was not one of "error of judgment" on the part of the engineer, but as to whether he exercised ordinary care.

Appeal from a judgment in favor of plaintiff, rendered after the trial at the New York Circuit, which was entered in the office of the clerk of the city and county of New York on December 18, 1888, and also from an order denying the defendant's motion to set aside the verdict and for a new trial, entered in the said clerk's office on December 18, 1888.

On March 8, 1887, at 6.20 A. M., the plaintiff took passage on an elevated train of the defendant at Eighty-ninth street, on the Third Avenue line, to go down to his work. The present action was brought

to recover for injuries sustained arising from the plaintiff's being pushed from the tracks of the defendant corporation by reason of a panic, occasioned by an engineer on one of the defendant's trains starting his engine without notice or warning and running it against the crowd of people on the track in front of it.

*Austin G. Fox,* for the appellant.

*Nelson Smith,* for the respondent.

BARRETT, J.:

There can be no doubt that the defendant is responsible for the negligence of their engineer in starting the train at the point and under the circumstances disclosed by this record. The act evinced a shocking disregard of human life, and it undoubtedly precipitated a number of men into the street below, killing or seriously maiming every one of them. It would only confuse the case to enter into a discussion as to whether the strict relation of carrier and passenger had ceased at the time of this dreadful occurrence. The learned judge at Circuit ruled that it had, and that ruling was certainly as favorable to the defendant as it had any right to expect. It absolved it from that high degree of care required in the running of its trains, and in the maintenance of its tracks and operating machinery. It reduced its responsibility to ordinary care. The jury have found, under appropriate instructions, that the defendant failed to exercise this ordinary care, and was guilty of active negligence. They could not well have found otherwise upon the testimony. It clearly appeared that there was a block near the Fourteenth street station, and that the train in question, filled with laboring men going to their morning's work, was compelled to halt some twenty-five or thirty-five feet north of the station. After a delay of about six or seven minutes, the conductor announced to the passengers: "All who are afraid of being late for work, get off." Thereupon a large number, certainly over fifty, got out upon the walk (thirty inches wide) provided by the company for its employees and proceeded quietly, "laughing and talking," towards the station platform, which was near by. Many of these people had almost reached the platform when the occurrence complained of took place. Some of them had even stepped upon the tracks for the purpose of mounting the platform in front.

a mode of ascent rendered necessary by the bar of an iron rod which ran across the end of the platform. At this moment the train in front of the station, which immediately caused the block, proceeded. Thereupon the engineer of the train which the plaintiff and other passengers had just left, without the slightest notice or warning to the crowd of people in front of him, started his engine *and moved towards and upon them.* Those who were on the track tried to save themselves by getting back upon the walk. Others who were upon two short extra planks (nearest the track) which served to widen the walk at this point, pressed outward on the ordinary space devoted to the walk. Still others pressed backward, thinking thus to save themselves from the locomotive. A panic naturally ensued. There were cries and shouts. People pressed against each other on this narrow and unprotected walk; and the result was, that eleven men, including the plaintiff, fell to the pavement below. Four were killed and the rest maimed or otherwise seriously injured. The testimony was sufficient to justify the inference that the plaintiff's fall resulted immediately and directly from the state of things brought about by the engineer's culpable negligence in thus starting the train. It is true that the plaintiff was unable to tell how he came to fall and that he did not remember being hit by any one. This only goes to show the man's integrity and that he was unwilling to color the scene or assert a recollection (to his own advantage) *which the fall had obliterated.* But there was ample evidence from which the jury could properly infer that the crowd was pressed back upon him by the engineer's act; and that *that,* with the accompanying panic — not a mere loss of balance — was the real cause of his fall. He does, however, remember the starting of the train, that there were many people in front of and behind him, that they "screamed and hollered," that the people on the track moved on the walk and there pressed back a little, and that he had passed the front of the locomotive before it started. He was, therefore, quite near the crowd, and it would have been impossible for such a large number of people, in a state of extreme excitement, to press back in so small a space without touching or otherwise affecting him. This was corroborated by other witnesses, especially by Lyle, who was evidently standing a little behind the plaintiff and who heard the shouting and saw the people crowded back from the

end of the platform. It will not do, upon such facts, to say that the plaintiff gave no evidence tending to prove that his injury resulted from the negligent act of starting the train. The inference that he fell *merely because he lost his balance on a slippery and unprotected walk,* without regard to the extraneous conditions referred to, is a mere possibility. Indeed, the evidence shows that everything was quiet prior to the starting of the train, and that no difficulty had been experienced by others in reaching the station platform safely. The inference found by the jury is much more reasonable and probable than the strained possibility contended for by the defendants; and the rule is well settled, that where the evidence justifies two inferences the jury may determine between them.

The testimony also showed that the plaintiff was not guilty of contributory negligence. At all events, there was sufficient evidence of its absence to warrant the verdict. The only contributory negligence claimed by the defendants was the bare act of leaving the car upon the conductor's practical invitation. That invitation was proved both by direct and circumstantial evidence. A witness testified that the conductor stood upon the rear platform of the first car, and there made the announcement — "All who are afraid of being late for work, get off." This was plainly addressed to the passengers in the second car, where the plaintiff was, as well as to the passengers in the first. Lyle also testified that the conductor said something to the passengers in the second car and that they at once got up in a body and went out. The plaintiff, though speaking English imperfectly, saw a man "with a cap on" and a "blue suit" call out something, and after that everybody got up — he as well as the rest — and went out. This man with the cap on and the blue suit was then standing at the gate, which was open for the *exit* of all. The case on this head is thus brought within the principle of *Filer* v. *New York Central Railroad Company* (59 N. Y., 351), and *Bucher* v. *New York Central and Hudson River Railroad Company* (98 id., 133). In the Filer case the court said (GROVER, J.) : "The employees upon a train, including brakemen, are in the line of their duty in assisting passengers in getting on and off the train. * * * Passengers rightly assume that these persons are familiar with all the movements of the train, and know whether they can, under the

particular circumstances, get on or off, or move upon the train with safety. When the conductor or a brakeman directs a passenger to get off the train, although in motion, such passenger will naturally assume that he knows that it is entirely safe or he would not give the direction." In the Bucher case the court said (Miller, J.): "It was for the jury to say whether any such directions were given by the conductor as authorized the plaintiff to get off the cars at that time" — while they were in motion — " or made him chargeable with contributory negligence for so doing.  *  *  * If the plaintiff had reason to believe, from what passed between him and the conductor, and from the surrounding circumstances, that it was safe and prudent for him to leave as he did, then he was justified within the authorities last cited — *Salter* v. *Utica and Black River Railroad Company* (88 N. Y., 42), and the *Filer Case* (49 id., 52),  *  *  *  *whether the plaintiff was asked by the conductor if he wished to get off* or whether the conductor told him to get off is not very important, as either remark, under the circumstances, might be regarded as a notification to him to leave the cars." (*McIntyre* v. *N. Y. C. R. R. Co.*, 37 N. Y., 287; *Corcoran* v. *N. Y. El. R. R.*, 19 Hun, 368; *Keating* v. *N. Y. C. and H. R. R. R. Co.*, 49 N. Y., 673; *Niven* v. *City of Rochester*, 76 id., 619.)

It is urged, however, that the learned judge erred in charging that the mere fact of leaving the train, under the circumstances disclosed, " was not in itself evidence of contributory negligence at all." This was not error, for the reason that the mere leaving of the car at the suggestion of the conductor did not contribute to the accident. If the plaintiff had fallen directly from the steps of the car or from the walk as he first touched it, the question presented by this exception would have been up for discussion. We have not over-looked the fact that the Court of Appeals, in the late case of *Hunter* v. *Cooperstown and S. V. R. R. Company* (112 N. Y., 371), held that an attempt to board a train, moving at the rate of four to six miles an hour, was negligence, as matter of law, although the person making the attempt was directed by the conductor, if he was going on the train, to "jump on." There, however, as in the other cases cited (*Filer* and *Bucher*), the accident happened in the very act of get-ting on or off the train. Here the plaintiff and all the other passen-

gers got off with entire safety. They proceeded, without difficulty and seemingly without the slightest danger, towards the station platform. They were not only practically invited to do this, but they were substantially compelled to do so, if they desired to reach their destination at any given or definite time. For aught that appeared, when they were told that they might leave the cars, they would have remained just where they were for hours. The utmost that can be fairly claimed by the defendants, under these circumstances, is that the plaintiff and the other passengers, in alighting, took the risks incident to the locality. They did not assume any other or greater risks, certainly not the risk of the defendant's negligence. The act of alighting had, therefore, no just relation to the accident and was in nowise a contribution thereto. The question was, whether the plaintiff was injured by the defendant's negligence while, but for that negligence, safely upon the walk; and whether the natural and ordinary risk incident to his being upon the walk contributed "at all" to the accident. The latter question was fully and fairly submitted to the jury. Indeed, the defendants did not except to the part of the charge under consideration until they had induced the learned judge specifically to charge the two following propositions :

"That the plaintiff took the entire risk from injury from every peril or danger to which he knew, or, in the exercise of ordinary care, he ought to have known, he was exposing himself by leaving a place of safety and going for his own convenience, with other persons, on the plank-walk." And ".that if the jury find as a fact that, *in placing himself upon the planks with* a number of other persons, the plaintiff *omitted to use ordinary care,* and that *such* want of ordinary care on his part contributed *directly, even in the slightest degree,* to produce the accident to himself, then the defendant is entitled to a verdict, even if the engineer in starting the train was guilty of gross or criminal negligence."

The next question is raised by the following extract from the charge :

"It is contended, on the part of the defendant, that the proximate cause of this injury was not the starting of the train by the engineer without warning or without a whistle being blown, but that it was caused by some passenger who had been upon the train, either in attempting to get upon it again or after he was upon the train, and

was lying prone on the platform striking some of the other passengers, and three passengers were thereby precipitated into the street. *There is nothing here to show that the plaintiff was one of those three passengers, nor is there anything to show that he was in anyway affected by that act.*" The defendant excepted to the part italicised. The charge was correct. The uncontradicted testimony of all the defendant's witnesses placed the passenger referred to (when he is said to have "kicked three people off the walk") at the rear platform of the first car. The uncontradicted testimony also placed the plaintiff, *at the same moment, far in advance of this point.* The charge was, therefore, as, indeed, it was throughout, quite as favorable to the defendant as the facts warranted.

Nor was it error to refuse to charge that the defendant owed the plaintiff no active vigilance to guard him from accident. This refusal must be considered with reference to what the learned judge had already charged, namely, that the defendant was only responsible for ordinary care. It certainly owed the plaintiff whatever active vigilance is implied in ordinary care. To that extent he was under their protection. The defendant evidently confuses the rule as to non-liability for passive negligence, a default in not doing something, where the injured party is a mere licensee, *and the commission of some affirmative act of negligence.* (*Remer* v. *L. I. R. R. Co.,* 48 Hun, 352; *Larmore* v. *Crown Point I. Co.,* 101 N. Y., 391.) One has no right to carelessly injure even a mere licensee, and the "active vigilance" which is not due him has reference to some affirmative act of care. (See opinion, EARL, J., *Nicholson* v. *Erie Railway Co.,* 41 N. Y., 533.)

It was not error to reject evidence, in substance, that similar conduct on a previous occasion had not been attended by disaster. That was what the offer amounted to, namely, that culpable negligence had passed once with impunity.

There was abundant evidence of the permanency of the injury, and also of the permanency of the pain and suffering. The testimony was clear and conclusive that the plaintiff had an incurable disease (resulting from the accident) called "Potts' disease of the spine." The physicians testified that it would last as long as he lived, and the plaintiff himself testified that from the time of the accident down to the day of trial (a period of nineteen months) he

had never been free from pain by day or by night. This testimony clearly justified the refusal to charge "that there was no evidence sufficient to warrant the jury in awarding damages for any future pain." Such pain was throughout part and parcel of the incurable disease — an inseparable incident thereto — and future, even life-long pain seems to be a reasonable *sequitur* from such facts.

The point that the learned judge erred in charging the jury as follows: "You would also be entitled to take into consideration and to award him a reasonable sum for *the certainty of the duration* and the continuation of the effects of this injury, if, upon the evidence, you find that the injuries *are likely with reasonable certainty to be permanent,*" might well have been omitted. What the learned judge meant, and what the jury must have understood him to mean, is apparent. The whole charge indicates that what he really dwelt upon was "reasonable certainty" and the word "likely" was one of those petty slips of the tongue which is apt to creep into almost all colloquial speech. What precedes also renders the meaning clear. It is "the certainty of the duration" for which a reasonable sum may be awarded. That it was so understood by the defendant's counsel is evidenced by the fact that the attention of the court was not specially called *by the exception* to the inadvertent use of the word "likely," and the present cavil is now made for the first time This exception justifies the avowal made upon the argument, that the case was tried closely and with a view to exceptions. Lastly, it would have been absurd to speak to the jury of a possible "error of judgment" on the part of the engineer. The question, and the sole question, was whether he exercised ordinary care. Here he exercised no judgment at all. His judgment or want of judgment had nothing to do with the result. Even if he exercised his best judgment, and that proved to be no judgment at all, but, on the contrary, wanton negligence, the defendants would certainly be liable. There are no other exceptions calling for special consideration.

The verdict was just, the trial free from substantial error, and the judgment and order denying the motion for a new trial should be affirmed, with costs.

VAN BRUNT, P. J., and DANIELS, J., concurred.

Judgment and order affirmed, with costs.