or a logical conclusion, that the legislature intended to appropriate a highway previously dedicated to one public use for another purpose, whether that purpose be distinctly private or of a public character,—dominant or even co-extensive. Statutes granting privileges of an unusual character, abridging or affecting the rights of the public, must be construed strictly and in favor of the public. The privileges cannot be enlarged by intendment or implication. The appropriation of this highway can only be presumed to be servient, and in subordination to the objects for which it was originally intended,—the free and unobstructed use of the traveling public,—in which case the legislative authority must be exercised, if exercised at all, so as to cause as little interference and inconvenience to the public as possible. In the case under consideration the injury complained of could have been easily remedied, and the highway restored to its former state of usefulness, by the building of a suitable bridge over the ditch or channel constructed, and this, we believe, these defendants should have done without unnecessary delay. The demurrer is therefore overruled.

---

(21 Misc. Rep. 615.)

SIEBRECHT et al. v. PENNSYLVANIA R. CO.

(Supreme Court, Appellate Term. November 24, 1897.)

1. CARRIERS OF FREIGHT—INJURY BY DELAY—QUESTION FOR JURY.

On Friday, February 22, 1895, at 2 p. m., a lot of palms were shipped from Pennsylvania, by defendant's road, consigned to plaintiffs, at Jersey City. The bill of lading exempted defendant from damage by freezing during transit. In the ordinary course, the train should have reached its destination at 2 a. m., Saturday. According to defendant's evidence, it arrived at 5 p. m., Saturday. Plaintiffs' employé was informed from defendant's freight yard, at about that time, that the plants could not arrive before 5 a. m., Sunday. He went for them about 8 a. m., Sunday, and found them frozen. Experts testified that they were properly packed to resist freezing for 24 hours. Defendant produced evidence that between 2 p. m., Friday, and 8 p. m., Sunday, it was coldest from midnight of Friday to 8 a. m., Saturday, though for the entire period the temperature was below freezing. Defendant requested the judge to charge, "If the jury believe that by usual dispatch the plants would have reached Jersey City on the morning of February 23d, and that the coldest weather after the shipment occurred in the twelve hours preceding the morning of the 23d, then there is no evidence that the plants were injured because of the longer time occupied in transportation." The judge left it to the jury to say when the freezing took place. *Held* no error.

2. SAME—CONCLUSIVENESS OF VERDICT.

Where an injury to freight may have resulted from one of two causes, one of which would establish liability, and the other excuse the defendant, and absolute certainty as to which did cause it is unattainable, the verdict of a jury is conclusive.

Appeal from city court of New York, general term.

Action by Henry A. Siebrecht and others against the Pennsylvania Railroad Company. From a judgment of the general term (46 N. Y. Supp. 1100) affirming a judgment in favor of plaintiffs, defendant appeals. Affirmed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Robinson, Biddle & Ward (H. G. Ward, of counsel), for appellant
J. M. Gardner, for respondents.

McADAM, J. The action is to recover for damages done to certain plants of the plaintiffs, while in defendant's care, caused by alleged unreasonable delay in transportation, during which they were frozen. It appears that on Friday, February 22, 1895, at 2 p. m., one Burton, a florist and greenhouse keeper at Chestnut Hill, Pa., shipped by the defendant's road a lot of palms, consigned to the plaintiffs, at Jersey City, which the defendant agreed to transport with due dispatch. By the bill of lading, the defendant was exempted from damage done by freezing while in transit. In order to recover, therefore, it became necessary for the plaintiffs to establish negligence or breach of duty on the part of the defendant; so that they were bound to prove that the defendant not only unreasonably delayed transportation, but that the plants were frozen during the time of delay, and because of it. Read v. Spaulding, 30 N. Y. 630; Michaels v. Railroad Co., Id. 564; Condict v. Railway Co., 54 N. Y. 500; Rawson v. Holland, 59 N. Y. 611, 619; London & L. F. Ins. Co. v. Rome, W. & O. R. Co., 144 N. Y. 200, 39 N. E. 79. The plaintiffs assumed this burden, and proved that the average time of a freight train between the place of departure and the terminus at Jersey City was from 8 to 12 hours. This would fix about 2 a. m. on Saturday as the proper time for the arrival of the train at its place of destination, but the plants could not be delivered, in any event, according to the usual course, until the business hours of that day. According to the defendant's evidence, they arrived at Jersey City on Saturday at 5 p. m. The plaintiffs had no one at the train at that time to receive the goods. Their employé Smyth testified that he telephoned on Saturday, about 5 p. m., to the freight yard of the defendant, and received a reply that it would be impossible for the plants to get in until 5 o'clock on Sunday morning; that he drove over on Sunday morning about 8 o'clock, and received the plants in a frozen condition. Of course, the defendant, if free from neglect, was not responsible for the weather. It agreed simply to transport the plants with due care and dispatch, and if, within the reasonable time allowed for transportation, the weather became so cold that the plants were not able to withstand it, the loss, under the bill of lading, would have to be that of the shipper or consignees. The defendant produced the United States weather report, which is a contemporaneous record kept by trained public servants, upon whose returns the government weather bureau founds all its forecasts, and proved by this record that from February 22d, at 2 p. m., to February 24th, at 8 p. m., the weather was coldest between midnight of the 22d and 8 a. m. of the 23d, the thermometer having fallen to a minimum of 16 deg. at New York and 20 deg. at Philadelphia, and that from the night of the 23d (Saturday) until the morning of the 24th (Sunday) the thermometer highered; registering, however, some degrees below freezing. The defendant claimed that this established that the freezing of the plants occurred between Friday at 2 p. m. and

Saturday morning, when they ought to have arrived in Jersey City, and upon this theory requested the court to charge that "if the jury believe that by usual dispatch the plants would have reached Jersey City on the morning of February 23d, and that the coldest weather after the shipment occurred in the twelve hours preceding the morning of the 23d, then there is no evidence that the plants were injured because of the longer time occupied in transportation"; to which the trial judge replied, "I refuse to charge as requested, but will leave the fact to the jury, to say upon all the evidence when the freezing of the plants took place." Of course, it was for the jury to say when the freezing took place; and if the request had been that, if they found that the freezing occurred during the usual period of transportation, the defendant would not be liable, it would, no doubt, have been charged. But the defendant went further, and asked for a binding instruction that if the coldest weather after the shipment occurred in the 12 hours preceding the morning of Saturday. the 23d, then there was no evidence that the plants were injured because of the longer time occupied in transportation. This result did not necessarily follow, for, according to the record offered in evidence by the defendant, the mercury stayed below the freezing point on Saturday, and during that night and Sunday morning. This was of itself some evidence bearing on the question, and material to its determination, in view of the expert evidence introduced. Experts testified that plants are safely shipped during all seasons of the year, and that those in question were properly packed to resist freezing for 24 hours. It was for the jury to say whether they might not have successfully defied freezing if they had not been longer exposed to the elements. It is common knowledge that with the natural heat in live plants, like that in human bodies, they may resist low temperature for a given time before freezing, and that the hardiest plant or body, however well protected, may finally perish, if exposed long enough to a rigorous winter temperature. This feature had to be considered by the jury in reaching a result. The risk of freezing after the usual time for transportation expired was on the defendant, and the evidence was sufficient to require the submission to the jury of the question whether the freezing occurred while the defendant was in default; and they found that it did occur during that period, from causes for which, by reason of its neglect, the defendant became liable. Negligence is, in general, a conclusion from the facts in evidence, to be drawn by the jury under instructions from the court, and is always so when the facts or conclusions rest in doubt. Wells, Law & F. § 265, and cases collated in 3 Abb. N. Y. Dig. p. 279, subd. 97. When the inferences to be drawn from the testimony are not clear and incontrovertible, and men of ordinary judgment and discretion might differ as to its significance, it is the exclusive province of the jury to pass upon the questions involved. Thurber v. Railroad Co., 60 N. Y., at page 331; Payne v. Railroad Co., 83 N. Y. 572; Card v. Railroad Co., 22 Wkly. Dig. 321; Hart v. Bridge Co., 80 N. Y. 622. Where the injury may have resulted from one of two causes, one of which would establish lia-

bility, and the other excuse the defendant, and absolute certainty as to which did cause it is unattainable, the verdict of a jury is conclusive. Durkin v. Sharpe, 12 Wkly. Dig. 421; Weiler v. Railway Co., 53 Hun, 372, 6 N. Y. Supp. 320. We have not referred to the plaintiffs' proofs as to temperature, because the exception presented for review is to the refusal to charge, which was founded exclusively on the defendant's evidence as to temperature, conditioned upon the finding that it was true.

In view of the facts established, and the inferences to be drawn from them, with the inherent probabilities,—all of which were to be considered by the jury,—the trial judge properly disposed of the request to charge; and, as his refusal to make it is the only ground upon which the exception urged was taken, the judgment must be affirmed, with costs. All concur.