Margaret Cosgrove, as Administratrix, etc., Appellant, *v.* The New York Central and Hudson River Railroad Company, Respondent.

If a traveler upon a highway crossing a railroad is himself free from fault, and does not hear an approaching train, and the railroad corporation is guilty of negligence in not giving the proper signals, it cannot escape responsibility because the horse of the traveler, frightened by the sudden approach of the engine, suddenly starts forward, and getting beyond control, draws the wagon on to the track and so exposes the traveler to injury.

It is not a legal inference that the traveler heard the approach of the train because the horse did.

(Argued October 24, 1881; decided November 22, 1881.)

Appeal from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made May 15, 1879, which affirmed a judgment in favor of defendant, entered upon an order nonsuiting plaintiff on trial.

This action was brought to recover damages for the alleged negligent killing of John Cosgrove, plaintiff's intestate, who was killed by a collision at a crossing on defendant's road.

The material facts are set forth in the opinion.

*Homer A. Nelson* for appellant. The evidence in the case authorizes a recovery by plaintiff, on the ground that there was no negligence on the part of Cosgrove contributing to the accident. (*Ramsay* v. *The N. Y. C. & H. R. R. R. Co.*, Sup. Ct., 4th Dept. N. Y. W'kly Dig., June 4, 1877, 396; *Weber* v. *N. Y. C. & H. R. R. R. Co.*, 67 N. Y. 587; 58 id. 451; *Kellogg, Ex'r, etc.*, v. *N. Y. C. & H. R. R. R. Co.*, 79 id. 72.) It is not as matter of law negligence for a person approaching a railroad in a carriage upon a highway, not to stop; his omission to do so is a fact to be submitted to the jury. (*Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 N. Y. 464.) To justify a nonsuit on the ground of contributory negligence the negligence must appear so clear that no construction of the evidence or inference drawn from the facts would have warranted a contrary conclusion. (*Green, Adm'r, etc.*, v. *The Erie R. R. Co.*, N. Y. W'kly Dig., No. 7, July 30, 1877, 596.

*Samuel Hand* for respondent. In a case like the one at bar where there is no proof of freedom from negligence on the part of the plaintiff's intestate, there can be no recovery. (*Pakalinsky* v. *R. R. Co.*, 82 N. Y. 424; *Schwartz* v. *H. R. R. R. Co.*, 4 Robt. 347; *Leonard* v. *Collins*, 70 N. Y. 95; *Wasmer* v. *R. R. Co.*, 80 id. 212; *Reynolds* v. *R. R. Co.*, 58 id. 248; *Hale* v. *Smith*, 78 id. 615; *Cordell* v. *R. R.°Co.*, 75 id. 330.) The fright of the horse could not be imputed to the defendant, there being no unnecessary blasts of whistle and noise of bell. (*Coy* v. *U. & Sch. R. R. Co.*, 23 Barb. 643; *Warner* v. *R. R. Co.*, 44 N. Y. 465.)

Sickels — XLII.      12

ANDREWS, Ch. J. The negligence imputed to the defendant was the omission to ring the bell or sound the whistle, as required by statute (Laws 1854, chap. 282, § 7). The evidence on this point was conflicting, and presented a question for the jury. The nonsuit is sought to be sustained on the ground that the accident was caused by the horse becoming unmanageable and getting beyond the control of the driver, and rushing in front of the engine, and that the omission of the statutory signals did not cause, or contribute to, the casualty.

The railroad, at the point of the accident, runs north and south, through a cut with walls on the sides, terminating a short distance south of the crossing in question. An east and west highway crosses the railroad about two hundred and sixty-eight feet south of the place of the accident, on a bridge, nineteen feet above the railroad, and from this highway, a short distance east of the bridge, branches the highway on which the deceased and Barringer were traveling, when the accident happened. This highway, from its junction with the east and west road, descends about one foot in ten until it reaches the level of the railroad, which it crosses at grade. The walls on the sides of the cut, diminish in height northerly of the bridge, until they run out near the crossing.

The plaintiff's intestate shortly before the accident was invited by Barringer to ride, and they started, with a horse and wagon owned by Barringer, from a point on the east and west highway west of the railroad, and crossing the bridge, turned into the highway before spoken of. Two witnesses saw the collision from a point west of this highway crossing, which commanded a view of the crossing and of the highway, to its junction with the east and west road. They first observed the wagon descending the hill toward the crossing. Barringer was striving to hold the horse, which apparently was pulling hard. He succeeded in checking him. The horse started a second time, and was again checked about opposite the end of the stone wall, thirty-two feet from the crossing; and at that moment (as may be inferred), seeing the approaching engine, suddenly plunged ahead and brought the wagon directly in

front of it, and both the plaintiff's intestate, and Barringer, were killed. The engineer testifies that he first saw the horse and wagon just as the horse was stepping upon the track; that the driver was holding him back, and the horse's mouth was wide open. At the same moment he saw the plaintiff's intestate, with one hand on the dashboard of the wagon, and one on the seat, and with his feet over the side, as if about to jump, and he sprang just as the locomotive reached him. The inference from the testimony of the two witnesses who observed the wagon as it came down the hill is, that the plaintiff's intestate did not exhibit any intention of leaving the wagon until the horse was about making his last plunge.

There can be no controversy as to the proposition that to entitle the plaintiff to recover, it must appear, or there must be evidence from which a jury could infer, that the intestate's death was caused by the neglect of the defendant to ring the bell or blow the whistle; or that such negligence, without any concurrent negligence of the intestate, contributed to cause his death. If the accident resulted from a distinct and independent cause, with which the neglect of the statutory duty had no connection, plainly there can be no recovery; and it is equally clear that if the deceased heard the noise of the locomotive, or was in any way apprised of its approach, in time to have enabled him, by the exercise of reasonable prudence, to have avoided the danger, and he chose to trust to the ability of the driver to manage the horse and avoid a collision, the defendant is not responsible for the casualty, notwithstanding its omission to ring the bell, or sound the whistle. But, on the other hand, if he did not hear the locomotive, or know of its approach, the mere fact that the horse, on seeing the engine, suddenly started forward, and getting beyond control, drew the wagon on to the track in front of it, would not exempt the defendant from responsibility. If the horse had not started, doubtless no injury would have occurred. But horses are liable to be frightened by the passing of trains, and if a traveler driving upon a highway is himself free from fault, a railroad company guilty of negligence in not giving the signals, cannot escape responsibility be-

cause the horse, frightened by the sudden approach of the engine, blindly rushes before it, and exposes the travelers to injury. In the case supposed, the neglect to give the signals is the legal cause of the accident, and not the conduct of the brute. The cause of the restiveness of the horse when coming down the hill, is not shown. It may be conjectured that he heard the noise of the locomotive; but it certainly is not a legal inference that the deceased, or the driver heard it, because the horse did. If the deceased heard it before reaching the end of the wall, he may have been negligent in remaining in the wagon; but it was for the jury to draw the inference from the evidence. When did the deceased first discover the danger; and did he do, or omit to do, any thing after he knew that the engine was approaching, which reasonable prudence required; and did the omission to give the statutory signals subject him to the peril which otherwise he would have avoided ?

We think these questions should have been referred to the jury, and that the nonsuit was improperly granted. This leads to a reversal of the judgment and a new trial.

All concur, except RAPALLO, J., absent.

Judgment reversed.