CYNTHIA A. TOLMAN, AS ADMINISTRATRIX, ETC., OF JOSIAH H. TOLMAN, DECEASED, RESPONDENT, *v.* THE SYRACUSE, BINGHAMTON AND NEW YORK RAILROAD COMPANY, APPELLANT.

*Evidence — credibility of a witness — when it is a question for the jury — rule as to the weight of affirmative and negative evidence as to the ringing of a bell — absence of positive evidence as to the exercise of care in approaching a crossing — when the exercise of it by the plaintiff is a question for the jury — additional allowance — when the General Term will not interfere with the discretion of the Special Term in granting one.*

This action was brought to recover the damages occasioned by the negligent killing of the plaintiff's intestate by the defendant. Upon the trial one Cole, a brakeman in the defendant's employment, was called as a witness by it, and testified that he did not say to one Ellis that the first thing he saw at the

time of the accident "was the horse just as the engine was about to strike him." Ellis was then called as a witness and testified that "Mr. Cole said to me that the first thing he saw was the horse just as the engine was about to strike him."

*Held*, that the court properly submitted the question of the credibility of the witness Cole to the jury; that it was for the jury to pass upon his evidence and determine whether they would believe or disbelieve it, and that its verdict could not be set aside upon the supposition that it was found in disregard of his evidence in whole or in part.

The rule in respect to affirmative and negative testimony as to whether or not a bell was rung when the train was approaching a crossing considered, and the evidence in this case held to be such as to justify the court in submitting the question to the jury.

The intestate at about half-past seven P. M., on December 21, 1880, was approaching a crossing over the defendant's tracks with his horse and cutter on his way from Syracuse to his house. Evidence was given tending to show that at a distance of 142 feet from the rails one could, in daylight, see the tracks in the direction from which the train came for a distance of 2750 feet. The night was very dark, misty and foggy, and it was impossible to see far or to hear distant sounds. There was no positive evidence from any witness to show that the deceased cautiously approached the track, looking and listening for an approaching train.

*Held*, that the question as to the absence of contributory negligence upon the part of the plaintiff was properly left to the jury.

The court charged that, while a "traveler is bound to look and listen for an approaching train before undertaking to cross, it is only when it appears from the evidence that he might have seen had he looked, or he might have heard had he listened, that the jury, in the absence of evidence upon the question, is authorized to find that he did not look and listen."

*Held*, no error; if to look or to listen would not apprise the party of the danger, negligence cannot rightfully be presumed from his failure to do either.

An order granting an extra allowance of costs will not be reversed where it does not recite upon what proofs it was made, and there is nothing to show that the case was not both difficult and extraordinary.

APPEAL from a judgment in favor of the plaintiff, entered on the verdict of a jury in a Circuit Court held in Onondaga county, and from an order denying a motion for a new trial on the minutes of the justice before whom the action was tried; also from an order granting an extra allowance. The action was brought to recover damages occasioned by the alleged negligent killing of the plaintiff's intestate by the defendant.

*L. Marshall*, for the appellant.

*T. K. Fuller*, for the respondent.

HARDIN, J. :

No error was committed at the circuit in submitting to the jury the question of the credibility of the witness John Cole.

*First.* He was called by the defendant, and testified that he was upon the engine at the time of the accident, and he was then working for defendant as a brakeman and had been employed about three years, and was in such employ at the time he gave testimony.

*Second.* He testified that he did not say to Ellis that the first thing he saw at the time of the accident "was the horse just as the engine was about to strike him." Ellis was called as a witness and testified that "Mr. Cole said to me that the first thing he saw was the horse just as the engine was about to strike him." Under such circumstances the court was not at liberty to rule as a matter of law that his evidence was true, nor to predicate a motion for a nonsuit upon his testimony, nor to tell the jury to give full credence to him as a witness. But it was the duty of the court to allow the jury to pass upon his evidence and determine whether they would believe or disbelieve it. Nor are we at liberty to set aside the verdict of the jury upon the supposition that the same was found in disregard of his evidence, in part or in whole. (*Elwood* v. *The West. Union Tel.*, 45 N. Y., 549; *Kavanagh* v. *Wilson*, 70 id., 179; *Gildersleeve* v. *Landon*, 73 id., 609.)

A court or jury is not bound to adopt the statements of a witness simply for the reason that no other witness has denied them, and that the character of the witness is not impeached, the witness may be contradicted by circumstances as well as by statements of others contrary to his own, or there may be such a degree of improbability in his statements as to deprive them of credit, however positively made. (*Koehler* v. *Adler*, 78 N. Y., 287.) Whether Cole should be believed in his statements or not, was was properly a question of fact, to be submitted to the jury in the light of all the circumstances disclosed by the evidence. The rulings of the court and the charge to the jury were within the doctrine of the cases to which we have adverted.

The alleged negligence of the defendant consisted in an omission to give the proper signals as the train approached the crossing where the injuries occurred. When this case was here upon a former appeal, we laid down the rule in respect to affirm-

ative and negative testimony, as to whether the bell was rung or not. (*Tolman* v. *Syracuse, B. and N. Y. R. R. Co.*, 27 Hun, 335.) Upon the trial now before us the rule was observed, and witnesses were called who stated that the bell was not rung. But a passenger on the train says he heard the sharp whistle for down brakes, and that the train immediately began to slack up and slow its speed, and that he knew what the whistle meant, and that he did not hear any other signal until the whistle, after the train left Syracuse, before the accident at the Swamp crossing, and then he added : " I know I should have heard it had it been a proper signal." This witness says, prior to that time he had been employed as a fireman on a railroad engine, and had been frequently over this road from Syracuse to Janesville.

Other witnesses were called to speak of the movement of the train and its speed ; that it was behind time when it left Syracuse to run four miles to Janesville, and stated what their observations were about the whistle given, and the absence of all other whistles prior to the accident. Defendant's engineer testified about the occurrence, and said : " The first thing I knew I felt a jar at the crossing; the next thing I saw was the horses head on the steam chest, on the right side of the pilot." Several witnesses were called by the defendant to establish that the signals were given upon approaching the crossing. We cannot say that the evidence was so clear and preponderating upon the subject of whether or not the proper signals were given, as to warrant the court in withdrawing the question of fact from the jury, and to rule as a matter of law that the full duty of defendant was done in regard to giving signals. (*Salter* v. *The Utica and Black River R. R. Co.*, 59 N. Y., 631 ; S. C., 88 id., 42 ; *Voak* v. *Northern Cent. R. R.*, 75 id., 320 ; *McKeever* v. *N. Y. C. and H. R. R. R.*, 88 id., 667.) Probably the question of fact in the case last cited was somewhat like the one in this branch of the present case. There the judges of the Court of Appeals divided upon the evidence, a majority, however, held that the case was within the rule laid down in *Culhane* v. *N. Y. C. and H. R. R. R. Co.* (60 N. Y., 133), and that a nonsuit was properly granted. But we think the evidence adduced in the case in hand was something more than a mere statement that the witnesses did not hear the signals. Some of the witnesses disclose-

their opportunities for hearing, and as we have seen, Bush says he knows "the proper signals were not given." We therefore sustain the ruling and charge of the circuit judge in refusing to non-suit for want of proof of negligence of the defendant, and in giving that branch of the case to the jury as a question of fact.

The jury found negligence, and we cannot say that their verdict in that regard is wholly unsupported by evidence. (*Kellogg* v. *N. Y. C. and H. R. R. R. Co.*, 79 N. Y., 74.) The charge guarded the jury against mere negative evidence, and accords with the rule laid down by us in this case when here upon the former appeal. (See opinion of SMITH, P. J., 27 Hun, 327.)

*Third.* Apply the rule laid down as to the witness Cole, whose evidence we have said the jury were warranted in disbelieving, and then there is no witness called who gave an account of the conduct of the intestate preceding the accident. There is, therefore, no positive testimony from any witness to the effect that he cautiously approached the crossing, looking and listening for an approaching train, as is the duty of every person who is about to pass over a railroad track with a horse and cutter (*Kellogg* v. *N. Y. C. and H. R. R. R. Co.*, 79 N. Y., 74.)

The intestate on the 21st of December, 1880, about half-past seven P. M., was approaching the crossing with his horse and cutter, on his journey from Syracuse to his home, and the evidence tends to show that, at a distance of 142 feet from the rail, he could have obtained, in daylight, a view of the track 2,750 feet in the direction from which the train was coming on its approach to the crossing. Many witnesses say it was a very dark night, misty and foggy, and that it was impossible to see by reason of the phenomenal condition of the atmosphere at the time of the injuries. Witnesses say, that when a light was used to pick up the body of the deceased, that, from the car window, they could see but imperfectly; could see that the men were carrying something, but that what it was could not be determined. One witness says he could "see no more of the men than up to their waists." * * * "I could not see whether they bore anything towards the train." In fact they were carrying the body of the deceased to put it on the baggage car, to carry it to Janesville. While we recall the familiar rule that it must appear by evidence that the intestate was free from

contributory negligence, as stated in *Cosgrove* v. *N. Y. C. and H. R. R. Co.* (87 N. Y., 91), we are mindful of the qualification of the rule that oral evidence of a witness is not absolutely necessary to warrant the conclusion that the intestate was free from all contributory negligence. Deductions and inferences may be drawn from facts and circumstances sufficient to answer the requirement of the rule to which allusion has been made. (*Reynolds* v. *N. Y. C. and H. R. R. R. Co.*, 58 N. Y., 248; *Morrison* v. *The Same*, 63 id., 643; *Hart* v. *Hudson River Bridge Co.*, 80 id., 622; *Cosgrove* v. *N. Y. C. and H. R. R. R. Co.*, 87 id., 91; *Jones* v. *N. Y. C. and H. R. R. R. Co.*, 28 Hun, 366.) We quote from *Stackus* v. *New York Central Railroad Company* (79 N. Y., 469), the language of the chief justice, as applicable to the question in this case, as to whether the intestate was guilty of contributory negligence, viz.: "It depends upon all the circumstances. * * * the situation of the road, the facility for seeing and hearing, the wind and weather, the construction of the evidence and the credibility of witnesses. It is difficult to conceive of a question of fact more appropriate for the consideration of a jury than this. It is a question in respect to which men may differ." If the night was so dark, foggy and misty that it was not possible to see the lights on the approaching train, if the air was so heavy that the sound of an approaching train could not be heard in time to avoid injury, of what avail was it to look and listen? The facts and circumstances of this case do not compel an inference that the deceased did not listen and look for an approaching train. The fact of his injury under the circumstances disclosed did not give rise to a presumption of negligence.

It was not an error in the charge to state that while a "traveler is bound to look and listen for an approaching train before undertaking to cross, *it is only* when it appears from the evidence that he might have seen had he looked, or he might have heard had he listened, that the jury in the absence of evidence upon the question is authorized to find that he did not look and did not listen." If to look or to listen would not apprise the party of danger, the omission to do either cannot rightfully be the predicate for an imputation of negligence contributory to the injuries. (See *Schwier* v. *N. Y. C. and H. R. R. R. C.*, 90 N. Y., 564.) Our conclusion is that

no error was committed in the progress of the trial, and that we should allow the verdict to stand

Section 3253 of the Code of Civil Procedure authorizes an additional allowance of costs " in a difficult and extraordinary case where a defense has been interposed." Under that section the court allowed three per cent, or $176.85. The order does not recite upon what proofs the allowance was made. There is nothing to show that the case was not both difficult and extraordinary. The usual presumption obtains that the order is correct unless the contrary appears. The case had been heard twice at circuit, and had been in the General Term, and the volume of evidence presented to us on this appeal of 180 pages, furnishes some evidence that the case was both difficult and extraordinary. The case differs from *Duncan* v. *DeWitt* (7 Hun, 184). The order may have been granted upon proofs more extensive even than we find in the appeal book. The section from which we have quoted says " the court may also in its discretion award to any party a further sum," etc.

In *Morrison* v. *Agate* (9 Weekly Dig., 286) it was said by a co-ordinate court, viz.: " the determination of the question as to whether an action should be regarded as difficult and extraordinary, within the meaning of the Code, involves so many considerations which are addressed to the discretion of the judge, that the appellate court rarely interferes." (See, also, *Bryon* v. *Durrie*, 8 Weekly Dig., 57.) Under the circumstances of this case, we think the fair presumption is, that the allowance was proper and for a proper amount. (*Everingham* v. *Vanderbilt*, 12 Hun, 75.) " Error cannot be presumed to have intervened in the course of legal proceedings of this character." (Opinion DANIELS, J., p. 80.) To reverse the order we should be obliged to say that the discretion of the trial judge was improperly exercised. (*Morss* v. *Hasbrouck*, 13 W. Dig., 393, [G. T.]; *Burke* v. *Candee*, 63 Barb., 552, followed; *Decolmyn* v. *Chamberlain*, 48 How., 413.) We are not prepared to demonstrate, upon the papers now before us, that the trial judge improperly exercised, or abused his discretion, and we are constrained to approve of the moderate allowance made.

The order will therefore be affirmed.

SMITH, P. J., and BARKER, J., concurred.

Judgment and order affirmed.