SOPHIA A. MILLER and Another, as Administrators, etc., of JOHN
H. MILLER, Deceased, Respondents, *v.* THE NEW YORK CENTRAL
AND HUDSON RIVER RAILROAD COMPANY, Appellant.

*Death resulting from negligence — proof of the defendant's negligence affords no*
*inference of the absence of contributory negligence by the plaintiff — what is not*
*contributory negligence.*

Although it be shown, upon the trial of an action brought to recover damages
resulting from the death of the plaintiffs' intestate, that his death was caused
by reason of a collision with a railway train operated by the defendant at a
highway crossing, and that the defendant was guilty of negligence in failing
to give a sufficient signal to warn persons on the highway crossing of the
approach of the train, no inference arises therefrom that the deceased was free
from contributory negligence, and to support the action the plaintiffs have the
burden of showing that the negligence of the deceased did not contribute to
the calamity.

If by the exercise of reasonable care the deceased could have avoided the
collision and its consequences, the plaintiffs are not entitled to recover.

If a person is suddenly placed in a position of danger by the negligence of
another, which compels him to act suddenly to extricate himself, he may not
be chargeable with negligence if he fails to avail himself of the very best means
to accomplish his escape, and in consequence suffers an injury.

Where a team, driven by a person along a highway, becomes unmanageable or
the driver loses control over them, and in consequence they enter upon the
tracks of a steam railroad company at a highway crossing, against the will of
the driver, and are run down by a passing railroad train, and the driver killed,
the driver is not chargeable with negligence contributing to the accident.

APPEAL by the defendant, The New York Central and Hudson
River Railroad Company, from a judgment of the Supreme Court
in favor of the plaintiffs, entered in the office of the clerk of the
county of Niagara on the 21st day of September, 1893, upon the
verdict of a jury, rendered after a trial at the Niagara Circuit, and
also from an order entered in said clerk's office on the 12th day of
September, 1893, denying the defendant's motion for a new trial
made upon the minutes.

*Charles A. Pooley,* for the appellant.

*E. M. & F. M. Ashley,* for the respondents.

Bradley, J. :

The death of the plaintiffs' intestate occurred at a highway cross-ing of the Rome, Watertown and Ogdensburg railroad, operated by the defendant, in June, 1892. He was riding in a wagon drawn by a pair of horses driven by him going east upon what is known as the Braley road, which crosses at right angles a highway known as the Randall road, in the town of Wilson, county of Niagara. His team went upon the track of the railroad, which crosses the inter-section of the two roads in a northeasterly and southwesterly direc-tion. His wagon was struck and he was killed by a train from the southwest. The accident took place about six o'clock in the after-noon, and the plaintiffs allege that it was occasioned solely by the negligence of the defendant. It appears that at a point 335 feet west of the crossing a willow hedge extended from the Braley road south to the railroad right of way, and on a line at the center of the track 490 feet from the crossing, and that along the east side of the hedge was an orchard. The situation was then such that on passing the hedge going east on the Braley road the view of a train approach-ing from the southwest was shut off by it and the trees for some distance, so that when a point 95 feet from the center of the crossing was reached an object on the track could be seen at the dis-tance of only 497 feet, increased to 665 feet when 77 feet from the crossing, and to upwards of a mile when 63 feet from it. The train was running fast. The ringing post was 1,467 feet from the cross-ing. The train passed that without ringing the bell or blowing the whistle. The whistle, however, was sounded 500 or 600 feet from the crossing, described by witnesses as two short, sharp toots. No other signal of the approaching train was given. In view of the situation and circumstances the conclusion was warranted that it was inadequate, and that by the omission to give a more suitable signal to warn persons on the highway leading to the crossing of the approach of the train, the defendant was chargeable with negligence.

But from that fact alone no inference arises that the deceased was free from contributory negligence, and to support the action the plaintiffs have the affirmative of that question, and the burden of showing that his negligence did not contribute to the calamity. (*Weston* v. *City of Troy*, 139 N. Y. 281.)

If, therefore, by the exercise of reasonable care he would have avoided the collision and its consequences, the plaintiffs were not entitled to recover. What is reasonable care is dependent upon the circumstances as they existed at the time in question. When a person is suddenly placed in a position of danger by the negligence of another, which compels him to act suddenly to extricate himself, he may not be chargeable with negligence if he fails to avail himself of the very best means to accomplish his escape and in consequence suffers an injury. (*Twomley* v. *Central Park, N. & E. R. R. R. Co.*, 69 N. Y. 158; *Dyer* v. *Erie Ry. Co.*, 71 id. 228; *Salter* v. *U. & B. R. R. R. Co.*, 88 id. 42.)

It is urged on the part of the plaintiffs that the emergency when the approaching train came within the view of the intestate was such as to relieve him from the imputation of negligence. The facts are that when he had passed the willow hedge, his horses pro-ceeded on a trot, and when about seventy-seven feet from the cross-ing, the off-side horse pranced and, as some of the evidence tended to prove, lunged ahead, while the other horse continued to trot. It quite satisfactorily appears from the evidence that when that point in the highway was reached, the train was in view, and the horses may have seen it before the deceased could, as he was about seven-teen feet in the rear of their heads. But in a moment later it must have been seen by him if he looked in the direction from which it was approaching. There was then, so far as appears, up to the time the horses went upon the track, ample room to turn his team around or to turn to the left into the Randall road on the west side of the railroad. And it is difficult to see why he did not do so, unless he failed to observe the train, or concluded that he could cross the track ahead of it. If, however, his horses became unmanageable, or he lost control of them, and they in consequence entered upon the track at the crossing against his will, he would not be responsible for it. (*Cosgrove* v. *Railroad Co.*, 87 N. Y. 88.)

It is urged by the plaintiffs' counsel that the jury were permitted by the evidence to so find the fact. The court charged the jury that if Miller's horses became unmanageable and carried him upon the railroad track in spite of his efforts to prevent it, then the plain-tiffs might recover if they also found that the defendant was negli-gent. The defendant's counsel excepted. The evidence does not

fairly justify such inference.    It does not appear by the testimony of those who saw the deceased approaching the track, that he made any attempt to turn his horses from it, and none of the witnesses were able to say that the team was beyond his control.    The witnesses say that he sat straight up in the wagon, looking ahead, holding the lines in his hands.    One of the plaintiffs' witnesses, who first saw the team when it was about twenty-five feet from the track, testified that the horses did not appear to be out of the control of the deceased; that one of them was then trotting; and another of them testified that Miller did not indicate by his actions any purpose to turn into the Randall road, although there was no reason why a person driving east on the Braley road could not have turned into it before getting to the railroad track.    The view taken of the evidence is that it does not support the proposition so submitted to the jury, and that the exception was well taken.

The fact that the train was in view of the plaintiffs' intestate, or may have been seen by him from the time he was about four rods from the crossing, with ample room to turn from the track if he had chosen so to do, makes it appear that he may have misjudged the speed of the train and thought he could cross the track ahead of it. In view of the distance he was from the track when the train came in his view, and of the opportunity he had of avoiding the crossing by turning to the left, it does not seem that the exigency was such as to excuse his going on the track in front of the train.

The judgment and order should be reversed and a new trial granted, costs to abide the event.

DWIGHT, P. J., LEWIS and HAIGHT, JJ., concurred.

Judgment and order appealed from reversed and a new trial ordered, with costs to abide the event.