---

(33 App. Div. 17.)

SCHEMERHORN et al. v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department.    July 26, 1898.)

1. ACCIDENT AT RAILROAD CROSSING—PROXIMATE CAUSE.
    At a point on a narrow highway where the vehicle occupied by decedent and her companion was within 100 feet of the railroad crossing, and the railroad track, which was hitherto obscured, was less than half that distance at their side, a train approaching at a high rate of speed, and about 500 feet from the crossing, first apprised them of its approach by three piercing shrieks from the locomotive whistle.    The whistle post was 1,400 feet from the crossing, but the first signals were given at the point stated.    The horse was ordinarily gentle, but, frightened by the whistle and the rumble of the train, became uncontrollable, and carried them in front of the train, and decedent was killed.    *Held*, that the negligence of the defendant in failing to give the whistle signals at the proper point was the proximate cause of decedent's death.

2. SAME.
    Where there are two concurring causes of an accident which resulted in the death of a person, either or both of which may be regarded as

proximate, and one is confessedly due to the negligence of the defendant, and the other happens without the fault of the deceased, the defendant is liable.

Appeal from trial term, Herkimer county.

Action by Jennie Schemerhorn and Ella Schemerhorn, as administratrices of the goods, chattels, credits, and effects of Mina Schemerhorn, deceased, against the New York Central & Hudson River Railroad Company. From a judgment dismissing plaintiffs' complaint and an order denying a new trial, plaintiffs appeal. Reversed.

The plaintiffs bring this action to recover damages for the alleged negligent killing of their intestate by the defendant's train of cars at the German street crossing, in the village of Herkimer. At the point where the accident occurred the track of the Mohawk & Malone division of the defendant's railroad crosses German street at nearly right angles. About 1,700 feet north of the crossing is a high ridge of land known as the "Hog's Back," and from this point to within about 500 feet of the crossing the railroad and highway are substantially parallel to each other, and about 130 feet apart. After passing this point, the railroad and highway come still nearer together, the railroad making a curve to the southeast as it and the highway meet at the German street crossing. At a point 540 feet north of the crossi g. is a dwelling house known as the "Maxfield House," opposite to which, and close by the railroad, is a cider mill which stands 580 feet from the center of the crossing, and about half way between the Maxfield house and the crossing the highway crosses Mud Lake outlet. At no point for a long distance north of the Maxfield house can a traveler upon the highway going towards the crossing see a train of cars until after it has passed the cider mill; but from the Maxfield house to the crossing a train can be seen for the entire distance south of the cider mill, save for an occasional obstruction in the way of trees and shrubbery between the Maxfield house and the outlet; but from the outlet to the crossing, a distance of 270 feet, there is no obstruction whatever to the view. At a point 100 feet north of the crossing an electric light pole stands upon the west side of the highway, but at this point, owing to the curve in the railroad, the track and the highway are but a short distance apart. The roadway of German street is quite narrow, and between the outlet and the crossing there is no place at which a horse and carriage can safely turn around without backing up. On the afternoon of the 17th day of June, 1897, the plaintiffs' intestate, who was a school-teacher and about 24 years of age, was invited by a gentleman by the name of Samuel W. Stimson to take a pleasure drive with him, which invitation was accepted. Mr. Stimson was driving a horse which he had owned for three years, and which was gentle, and, under ordinary circumstances, easily controlled, although somewhat afraid of the cars, especially when the locomotive whistled. On the occasion in question the horse was hitched to a one-seated cover d carriage, the top of the carriage being down, and in no way interfering with the view of the occupants upon either side. Mr. Stimson and Miss Schemerhorn left the central portion of the village of Herkimer, and drove northerly to German street, Miss Schemerhorn sitting on the right side of the carriage and Mr. Stimson on the left. They drove across the tracks of the defendant's railroad, and continued northerly along German street for a distance of about one mile, when they turned around, and immediately drove back over the same route, reaching the crossing at about 5 o'clock, at which time they were struck by a train of cars coming from the north upon the defendant's road at the rate of 35 or 40 miles an hour, and the plaintiffs' intestate was instantly killed. Mr. Stimson was also seriously injured, and testified upon the trial that he was rendered unconscious by his injuries, and that never since recovering his consciousness had he been able to recall any of the circumstances which immediately preceded the accident. At the close of the plaintiffs' case the court directed a nonsuit, and from the judgment entered thereon, as well as from an order denying the plaintiffs' motion for a new trial on the minutes, this appeal is brought.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Abram B. Steele, for appellants.

Charles E. Snyder, for respondent.

ADAMS, J.   A number of witnesses who were watching the defendant's train when it approached the crossing upon the day in question testified with considerable positiveness that no signal whatever of its approach was given until it had passed the cider mill, and consequently not until it was within about 500 feet of the crossing, when three sharp blasts of the whistle were given to indicate that danger of some kind was likely to be encountered.   This omission, it was frankly conceded upon the trial, as it was upon the argument of the appeal, was sufficient evidence of negligence upon the part of the defendant to carry the case to the jury, so far as that branch of the case is concerned.   But it was held by the learned trial court that the evidence was insufficient to establish the absence of contributory negligence upon the part of the plaintiffs' intestate, and for that reason the nonsuit was directed.

After the trial court had intimated the disposition it intended to make of the case, the learned counsel for the plaintiffs requested the court to submit various questions of fact to the jury, among which requests was one to the effect that upon all the evidence in the case the jury was at liberty to find that the defendant was guilty of negligence which caused the accident, and that the deceased was not guilty of contributory negligence.   This request, as well as all the others, was refused, and to such refusal in each instance an exception was duly taken.

Upon a careful reading of the evidence contained in the record, we are convinced that the learned trial court was in error in withholding this case from the jury, and especially in refusing to submit the question involved in the request just referred to.   The case, it is true, does not disclose precisely what measures were taken by either occupant of the buggy to avoid a collision with the cars as they were approaching the crossing until just before they reached the electric light pole, which, as has already been stated, was at a point in the highway about 100 feet north of the crossing.   The injury to Mr. Stimson was upon his head, and in consequence thereof he seems to have been deprived of all recollection of what occurred immediately preceding the accident; and the only witnesses who saw the travelers as they approached the crossing were a gentleman by the name of Richards, who was driving towards the crossing upon the southerly side of the same, and the fireman of the locomotive which came into collision with the horse and carriage.   Mr. Richards testified that as he approached the crossing he observed Mr. Stimson and Miss Schemerhorn coming from the opposite direction; that when he first saw them their horse was trotting at the rate of about five miles an hour; that Mr. Stimson was leaning forward with his face towards the railroad, and Miss Schemerhorn was sitting up straight; that just then the witness' attention was directed to the train, which was coming around the cider mill, at which time the horse had slowed up, but he

was not able to state whether it actually stopped or not. This witness testified that when he next saw the horse it was jumping and going towards the track, and Mr. Stimson was jerking him and trying to hold him; that his efforts proved unavailing, and the horse was struck at the lower or southerly end of the crossing. John C. Brennan, the fireman of the locomotive, testified that, as his train came around the cider mill, he observed the horse and carriage at the electric light pole, and that at that time the horse was standing still; that after the train had proceeded about 100 feet further the horse became frightened, rose upon his hind feet, and jumped towards the track; that Stimson endeavored to keep him off the track, but was unable to do so, and the horse succeeded in getting upon the track at the very moment the locomotive reached the crossing.

This evidence, in our opinion, would not only justify the inference that both Mr. Stimson and Miss Schemerhorn were on the lookout for the approaching train, but it also tended to show that they actually saw it after it reached a point south of the cider mill, and that they brought their horse to a standstill in order to avoid coming into collision with it. Waldele v. Railroad Co., 4 App. Div. 549, 38 N. Y. Supp. 1009. It is an undisputed fact in the case that just after passing the cider mill the locomotive sounded three shrill blasts of its whistle, and doubtless this, together with the rumbling of the cars, the ringing of the bell, and the application of the air brakes, frightened the horse, and prevented its driver from retaining control of him.

So, we have presented to us upon this appeal this state of facts: A train of cars approaching a highway crossing at a high rate of speed. No warning whatever given of its approach until it had reached a point about 500 feet distant from the crossing. The plaintiffs' intestate riding towards the crossing in company with a gentleman, who was driving a horse which ordinarily was perfectly gentle and easily controlled, but was frightened and rendered somewhat nervous by the shriek of a locomotive whistle. Lured on by the omission of the defendant's servants to give any warning of the approach of their train, the decedent and her companion had proceeded upon their way until they had reached a point 100 feet north of the crossing, and not more than half that distance from the railroad track as it ran along by the side of the highway, where the road was too narrow for them to turn about, and where for the first time they were made aware of the approaching train, with which they almost immediately came into contact by the uncontrollable action of the horse which the decedent's companion was driving. To say that these facts, uncontradicted or unexplained, will not permit the inference that the defendant's negligence was the proximate cause of the decedent's death, is a proposition to which we cannot yield our assent.

It may be conceded that in all probability the accident would not have occurred but for the fright of the horse; but, upon the other hand, it may be said that, if the defendant's servants in charge of this train had been mindful of their duty, and had given the usual signals of its approach at a whistling post which the defendant had caused to be erected at a point 1,400 feet north of the crossing for the ex-

press purpose of indicating to its employés where such signals were to be given, the plaintiffs' intestate or her driver might have heard the same in time to have either turned the horse about, or else to have stopped at a point which was not in such close proximity to the track as the one reached by them when they received their first intimation of an approaching train. The utmost, then, that can be claimed, from these circumstances, in support of the defendant's contention, is that there were two concurring causes of the accident which resulted in the death of the plaintiffs' intestate, either or both of which may be regarded as proximate; but, inasmuch as one of these causes was confessedly due to the negligence of the defendant and the other to an occurrence happening without fault on the part of the decedent, the plaintiffs should not, we are persuaded, be denied the right to maintain their action. Phillips v. Railroad Co., 127 N. Y. 657, 27 N. E. 978; Ring v. City of Cohoes, 77 N. Y. 83; Quill v. Telegraph Co., 92 Hun, 539, 34 N. Y. Supp. 470, and 37 N. Y. Supp. 1149.

This seems to be a case where it can be properly claimed that the decedent was lured into a place of danger by the negligent omission of the defendant to perform a plain duty, and, this being the situation, the defendant should not be allowed to escape all responsibility because the horse behind which the decedent was riding, rendered frantic by the approach of the train and the shrieking of the locomotive, got beyond the control of its driver, and exposed the decedent to a danger which she otherwise would not have encountered. Cosgrove v. Railroad Co., 87 N. Y. 88. Entertaining these views, we are constrained to reverse the judgment and order appealed from, and direct a new trial.

Judgment and order reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.