VANDERCOOK *v.* DETROIT, GRAND RAPIDS & WESTERN RAILROAD CO.

RAILROADS—INJURY TO PASSENGERS—PROXIMATE CAUSE.

* Plaintiff was a passenger over defendant's road. On approaching Lansing, in the night, the train ran into some flat cars standing on the Michigan Central track, 60 rods from the depot. The train was running so slowly that the plaintiff supposed it had reached and stopped at the depot. He soon ascertained that an accident had occurred. He remained in the car from 5 to 10 minutes, and then followed other passengers across a flat car, which stood close alongside the coach. The passengers stepped from the coach onto the flat car, and jumped to the ground, to go to the depot or to their homes. Plaintiff walked across the flat car, and, in jumping from it, caught the toe of his shoe in a stake-hole, and fell. *Held,* that the collision with the train of flat cars was not the proximate cause of the injury.

Error to Ingham; Person, J. Submitted December 6, 1900. Decided December 31, 1900.

---

* Head-note by GRANT, J.

Case by Willis Vandercook against the Detroit, Grand Rapids & Western Railroad Company for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

Plaintiff, on the evening of December 24, 1897, was a passenger over the defendant's road from Plymouth, Wayne county, to Lansing. The train was due in Lansing at 9 o'clock, and was a few minutes late. The tracks of the defendant and the Michigan Central united about 60 rods south of the depot at Lansing, and formed what is known as a "Y." Trains on either road were required to come to a stop upon approaching the Y, unless a certain signal indicated that the track was clear. The defendant's train approached the Y without stopping, and ran into a train of flat cars standing upon the track of the Michigan Central. The defendant's train was moving very slowly, and plaintiff testified that the jar was no greater than is common when the train is stopped by the application of the brakes. He supposed that the train had reached the depot. He remained in the car from 5 to 10 minutes, and then stepped from the car onto a flat car, which stood even with the steps of the coach and close to it, for the purpose of leaving the train to go up to the depot. Other passengers had preceded him, and had safely alighted. He stooped a little in his preparation to jump from the flat car, caught the toe of his boot in a stake-hole of the flat car, and fell forward, injuring his arm. He testified:

"The reason why I got off where I did was that there was a light there. A man stood there with a lantern, that I took to be a railroad man, asking us to get off there. I could not tell what kind of a looking man he was, whether large or small; it was too dark. I thought he was a railroad man because he had a lantern."

The jury found a verdict for the plaintiff.

*R. A. Montgomery,* for appellant.
*Smith & Hood,* for appellee.

Grant, J. ( *after stating the facts* ).   The negligence of the defendant, through its engineer, in running into the train upon the Michigan Central, is conceded.   The question in the case is this: Was that the proximate cause of the injury to plaintiff?   Plaintiff's counsel seek to bring the case within the rule stated in Shear. & R. Neg. § 26:

"The proximate cause of an event must be understood to be that which, in a natural and continuous sequence, unbroken by any new, independent cause, produces that event, and without which that event would not have occurred."

They cite the following authorities: *Jensen* v. *The Joseph B. Thomas*, 81 Fed. 578; *St. Joseph, etc., R. Co.* v. *Hedge*, 44 Neb. 448 (62 N. W. 887); *Halstead* v. *Village of Warsaw*, 59 N. Y. Supp. 518; *Phillips* v. *Railroad Co.*, 127 N. Y. 657 (27 N. E. 978); *Schemerhorn* v. *Railroad Co.*, 53 N. Y. Supp. 279.

In *Jensen* v. *The Joseph B. Thomas*, plaintiff was at work in the hold of the vessel.   The hatch covers were piled up by the side of the hatchway under which plaintiff was at work.   A freshly-painted keg was placed upon the hatch covers to dry.   Some one stepped upon the hatch covers, by means of which the keg was thrown into the hatchway, and fell upon the plaintiff.

In *St. Joseph, etc., R. Co.* v. *Hedge*, plaintiff jumped from a moving train in order to escape a threatened collision with a runaway freight car, due to the negligence of the defendant.

In *Halstead* v. *Village of Warsaw*, the defendant had been using a steam roller upon the street, and left it by the side of the street, which was only three rods wide.   The roller left a space of about two rods for the teams to pass.   The horse, an ordinarily gentle one, shied.   The driver, plaintiff's husband, suddenly pulled upon the reins, and the bit broke.

In *Phillips* v. *Railroad Co.*, plaintiff was crossing a railroad with his horse and buggy.   There were gates on each side to prevent travelers entering upon the approach

of trains. The buggy passed through the west gate without interruption, and, as he was passing under the east gate, the gate-keeper lowered the gate so as to strike the horse, and one of the lines broke. The horse turned suddenly, and upset the buggy.

In *Schemerhorn* v. *Railroad Co.*, defendant failed to give the crossing whistles until within 500 feet of the crossing, when three piercing shrieks of the whistle frightened the horse,—an ordinarily gentle one,—and he became unmanageable, and carried the decedent in front of the train.

It will be readily seen that these cases are not in point. The original cause and the alleged proximate cause were simultaneous. In each the injured party had not time to deliberately choose his course of action, while in most of the cases he was compelled by the situation to act as he did. In this case no injury resulted from the collision. Plaintiff was entirely safe and unhurt, and could have remained on board the train had he chosen to do so. No negligence is charged in failing to afford a safe place in which to alight. Undoubtedly the plaintiff's fall was not attributable to the negligence of any one. It was one of those accidents for which no one was to blame. Several others had alighted in safety. The passengers going beyond Lansing remained in the car. Plaintiff's home was at Mason, and he intended to take a train on the Michigan Central the same evening for his home. The Michigan Central train could not go until the track was cleared and the defendant's train had pulled up to the depot.

Under plaintiff's contention, defendant would be liable for any accident resulting to him from the time he left the car until he reached the depot, provided he was himself without negligence. If he had stumbled over the end of a tie or other obstruction, the defendant would be liable. If he had remained in the car for half an hour or more, instead of 10 minutes, and then concluded to go to the depot, the defendant would be liable. So, too, if a traveler on a highway found a bridge unsafe to cross, and attempted to ford the stream, or get across by some other

means, a municipality would be liable.   In *Lewis* v. *Railway Co.*, 54 Mich. 55 (19 N. W. 744, 52 Am. Rep. 790), the defendant was held to be negligent in carrying the plaintiff beyond the station, and giving him erroneous information as to where he was.   After alighting he soon discovered that he was south of the cross-road he intended to take, instead of north of it, as he was told when he alighted.   If he had landed where he was told he had, he had meant to follow the track south to the road, and pick his way across the culvert, though he might have shunned it by taking a side path.   In approaching the road from the south, he determined to cross the other culvert in the same way.   On nearing the cattle-guard his eye deceived him, his foot slipped, and he fell into the culvert.   It was held that the negligence of the defendant in carrying him past the station, and in giving him erroneous information as to the exact locality where he alighted, was not the proximate cause of the injury.   The question of proximate cause is there thoroughly discussed, and many authorities cited and commented upon by Chief Justice Cooley, in an opinion concurred in by the entire court.   We are of the opinion that that case controls, and that the court should have directed a verdict for the defendant.

Judgment reversed, and no new trial ordered.

The other Justices concurred.